## AUSTIN-WESTERN ROAD MACHINERY CO. v. BOARD OF COM'RS OF CARTER COUNTY.

No. 20853.    Opinion Filed May 3, 1932.

Order Recalling Mandate and Withdrawing Opinion Vacated Jan. 7, 1933.

Moore & George, Joseph L. McNab, and Clayton Carder, for plaintiff in error.

J. Berry King, Atty. Gen., by F. M. Dudley, Asst. Atty. Gen., and John L. Hodge, Co. Atty., for defendant in error.

CULLISON, J. Plaintiff instituted suit seeking judgment against the board of county commissioners of Carter county, Okla., for $12,212.50 for the purchase price for steel culverts furnished defendant.

Defendant answered: First, by general denial; second, that there was no appropriation of money for such purpose at the time of making such contract, if made, and, in the absence of an estimate made and approved for such purpose, the alleged contract of purchase was illegal and void; third, defendant denied the itemized account attached to plaintiff's petition; fourth, defendant specifically denied any obligation under the alleged contract of purchase, and that there could be no ratification of the same; fifth, that, if there was a contract of purchase, the attempted contract was illegal and void because the purported contract of purchase was for more than $500 in one lot of articles, and was not advertised and let at public letting as required by law.

Plaintiff replied by general denial. The case was tried to the court without a jury, and, at the conclusion of said trial, the court found in favor of defendant and against plaintiff. Thereupon the court rendered judgment for defendant and plaintiff appeals to this court.

The question presented by plaintiff in its brief as decisive of this appeal is, Whether the contract of purchase was invalid and unenforceable on account of having been made before the approval of the annual budget of needs and resources of Carter county for the fiscal year in which said contract was made and the merchandise was delivered.

The record discloses that, on July 2, 1928, defendant ordered from plaintiff certain wares and merchandise consisting of about 280 pieces of steel culverts and connection bands. The merchandise was shipped by plaintiff to defendant and received by defendant on July 17, 1928. The agreed purchase price for said material was $12,212.50. Said purchase was made in one order and contract and no advertisement thereof was given. Plaintiff presented the claim therefor in the form of numerous statements all under $500, dividing the entire amount into some 29 different claims. Defendant refused to pay the claims when presented.

The record further shows that the estimate of Carter county, Okla., had not been made and approved at the time said culverts were ordered, or at the time they were received by defendant.

Plaintiff contends that the board of county commissioners had power and authority to purchase said merchandise at the date they attempted to purchase the same, and that it was not necessary that the estimate for the needs and expenditures of Carter county be made and approved at the time of making said purchase. Plaintiff further contends that the money received by Carter county from sources other than ad valorem taxation was available for expenditures at the time said contract was made, and, further, that under the holdings of this court in the case of Union School District No. 1 v. Foster Lumber Co., 142 Okla. 260, 286 P. 774, that where a purchase was made before the estimate had been approved but later the estimate was approved, providing for said expenditure, then said contract was a good and enforceable contract. Defendant relies upon paragraph (f), section 8, chapter 48, Session Laws 1923-1924; sections 1 and 2, ch. 49, Session Laws 1925, and recent decisions of this court.

We will state at the beginning that we are presented with somewhat of a conflict, and will endeavor to clear up said conflict so as to arrive at a proper determination of the issues presented in this appeal.

The case of Union School Dist. No. 1 v. Foster Lumber Co., cited supra, holds favorable to plaintiff. Paragraph 2 of the syllabus is as follows:

"A contract by a municipality for the purchase of materials, entered into after the beginning of the fiscal year, is not violative of section 26, art. 10, of the Constitution, or Comp. Stat. 1921, section 8638, upon the sole ground that, at the time the contract was entered into and the materials furnished pursuant thereto, no appropriation therefor had been made by the excise board to pay for the material; provided that thereafter, and during the fiscal year, an estimate is made and approved by the proper officers, and an appropriation is made to create a fund to meet the condi-

·tions of said· contract and pay for the· material.".

In the Union School District Case the merchandise was purchased on July 2nd, and shortly thereafter the school district board made an estimate for the needs of said district, which said estimate was allowed ·by the excise board of Kay county on August 25, 1925, so that the merchandise was purchased before an estimate had been made for said school district, but that an estimate was made thereafter, and this court held that a contract made prior to the making of the estimate was a good and .valid contract, where an estimate was later approved to pay said contract.

In the body of said opinion we find the following language:

"There are ·good reasons why municipalities . should not contract for labor or material until an appropriation therefor has been made. But these reasons cannot prevail unless authority for such finds definite form in the statute or the Constitution. In this connection it should be understood that our statutory and constitutional provisions quoted in the foregoing paragraphs are unlike those statutes of which the statutes of the state of Indiana is representative. The Indiana statutes provide (or did provide) in express language, as follows: 'No board of county commissioners, officers, agent or employee of any county shall have power to bind the county by any contract or agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of the obligation attempted to be incurred, and all contracts and agreements, express or implied, and all obligations of any and every sort, beyond such existing appropriation, are declared to be absolutely void.' Section 5594e 1, Burns' Ann. St. Ind. 1901.

"The Colorado statutes provide that no contract shall be made by a municipality 'unless an appropriation shall have been previously made concerning such expense.'

. "As already fully set forth,·no such language is contained in our statutes or Constitution.

· "At the ·time our· Constitution was framed, and at the time our statutes relating to the fiscal management of municipalities and their power to· contract were enacted, this subject was not a new one. . We· must conclusively presume that the makers of the Constitution and the Legislature gave this particular subject—municipal indebtedness, the raising of revenue and ·the manner thereof for the purpose ·of carrying on the functions of government— ·serious and careful consideration; and, if the .Legislature had .intended that · such a

contract as the one in the present case should be absolutely void, they would have done what the Legislature of the states of Indiana, Colorado, and Louisiana did, said · so in express language to that effect."

. We observe that the learned Commissioner writing said opinion holds that if a. contract such as the ·one under consideration is void, the same must be because of some part of our Constitution or the statutes of this state, and further that, if the Legislature had intended that such a contract as the one in the present case should be absolutely void, they would have done what the Legislature of other states have done and declared so by express language.·

Nowhere in said opinion is reference made ·to chapter 49, Session Laws 1925, and more particularly sections 1 and 2 thereof, which said sections are as follows:

Section 1. "County and municipal officers and ·boards of commissioners having authority to purchase supplies, material, and equipment, and to let contracts for public . work. shall submit all purchase orders and contracts to the officer charged with keeping the appropriation and expenditure records of the county or municipality, who shall, if there be an unincumbered balance in the appropriation made for that purpose by the excise board, so certify by signing the purchase order or contract; provided, that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality."

Section 2. "The cost of all supplies, material, and equipment, and the contract price of all public work shall be charged against the appropriations as made by the excise board at the time purchase is made or contract let, and the balance in the appropriations account, after such charge is deducted, shall constitute the unincumbered balance available for expenditures."

Section 1 of the act just quoted gives the board of .county commissioners authority to purchase supplies, material, and equipment, but they shall submit all purchase orders and contracts to the officer keeping the appropriation so that they may ascertain whether there is an unincumbered balance in said appropriation, provided, ."that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality." . .

By section 2 of said act, the. Legislature

provided the method whereby said accounts should be kept, so that the same would reflect the amount remaining in said account subject to expenditure.

This court had chapter 49, supra, under consideration in the case of Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48, and at page 15 of Okla. Reports (285 P. p. 55), this court said:

"At one time in Oklahoma public officials entered into contracts without regard to the amount of the appropriations made. They acted on the theory that the inhibition in a statute applied only to the issuing of warrants against the appropriation. The result of this was to exhaust the appropriation by the issuance of warrants, leaving contracts entered into prior to those for which the warrants were issued without any appropriation for the payment thereof, and judgments were then taken on these prior contracts. By this means municipalities expended more money than was appropriated.

"The Legislature in 1925, in order to correct this condition, adopted Senate Bill No. 209, which appears as chapter 49, S. L. 1925. The effect of this act was to require all contracts to be submitted to the officers charged with keeping the expenditure records, and to void any contract not certified by the officer charged with keeping the expenditure record to be within the appropriation. The act further provided that the amount of the contract should be charged against the unexpended appropriation when the contract was made; the latter provision reading as follows: 'Section 2. The cost of all supplies, material, and equipment, and the contract price of all public work shall be charged against the appropriation as made by the excise board at the time purchase is made or contract let, and the balance in the appropriations account after such charge is deducted, shall constitute the unincumbered balance available for expenditures'."

Under the provisions of chapter 49, Session Laws 1925, supra, as construed by this court, where the contract is not within the appropriation made by the excise board and certified to by the official keeping the record of said appropriation, said contract is void.

Thus we are confronted with a conflict between the decision in the case of Union School District, supra, and the Coggeshall Case, supra.

The Coggeshall Case is based upon chapter 49, Session Laws 1925, and was decided by this court December 10, 1929. The Union School District Case was decided January 21, 1930, and nowhere therein does it mention chapter 49, Session Laws 1925, which leads to the conclusion that said enactment of the Legislature was not called to the attention of the court in the preparation of the Union School District Case.

The rule announced in the Union School District Case does not appear to be in conformity with the enactment of the Legislature under consideration and the Coggeshall Case just cited, so that one or the other must give way.

We believe, and hold, that the Coggeshall Case, as it interprets chapter 49 of Session Laws 1925, correctly construes the law, and that, in so far as the same conflicts with the Union School District Case, the latter case is expressly overruled.

In the case at bar the trial court found that the contract was illegal from its inception.

Paragraph (f), section 8, ch. 48, Session Laws 1923-1924, provides:

"All moneys raised for the use on the county highways in each county, or apportioned to each county for road purposes, from any source, including all funds and monies heretofore used by the board of county commissioners derived by law, levy, taxation, or apportionment, and which have heretofore been known as the county road maintenance fund, state highway construction fund, construction of state highway fund, and all of the funds and revenues which have been made up of ad valorem taxation, automobile license taxes, one-fourth of one-mill levy, and gross production tax going to the various counties for county road purposes, shall be placed in the county treasury in a fund to be known as the county highway fund, to be expended on order of the county commissioners without the supervision of the State Highway Commission, on county highways, as defined herein, or on state highways, within their respective counties, if in the judgment of the county commissioners such expenditure would be just and equitable and for the best interest of the county. * * * All moneys collected, apportioned or received from any source by any county for road purposes under existing statute law of this state, are hereby diverted in the county highway fund, which shall consist of the ad valorem tax levy, provided for in section 10202, Compiled Oklahoma Statutes, Annotated, 1921, and all monies heretofore received as automobile license tax, provided for in section 10139, Compiled Oklahoma Statutes, Annotated, 1921, and all monies heretofore received from gross production tax, which is now apportioned as provided for in section 9822, Compiled Oklahoma Statutes, Annotated, 1921, to be

expended by the county commissioners, as provided by this act."

Said section provides for a county highway fund, which fund shall embrace all of the different funds enumerated in said section. Said fund shall be entered in the statement prepared by the board of county commissioners and approved by the excise board, showing the amount of money appropriated in said fund to be expended by the board of county commissioners during the year.

In discussing the effect of paragraph (f), section 8, ch. 48, Session Laws 1923-1924, on the different funds theretofore existing, this court held, in the case of M., K. & T. v. Washington County, 136 Okla. 191, 276 P. 769, at page 773:

"* * * The Legislature, by subdivision (f) of section 8, provided that all revenue raised in the manners specified in subdivision (f) of section 8 should be converted into a fund, known as the county highway fund, to be expended on order of the county commissioners, without the supervision of the State Highway Commission, on county highways as defined in the act, or on state highways within their respective counties, which shall be in furtherance of the legislative plan of establishing a more efficient highway system in the state of Oklahoma. The state had established certain state highways, and, in order to provide a more efficient highway system, it provided for the construction and maintenance of a connected system of state highways by authorizing the funds raised under the several laws of the state, designated in subdivision (f) of section 8, relating to the highway system, to be placed in one fund."

All of the different funds were consolidated into one fund to be known as the county highway fund. Said fund contains all the funds derived by taxation for highway purposes, and as such would be a necessary part of the statement submitted to and approved by the excise board. The approval of said fund by the excise board was necessary, before there was an appropriation against which contracts could be made.

Under chapter 49, Session Laws 1925, the contract was void unless approved by the officer keeping the estimate, and unless there was an unexpended balance in said fund sufficient to cover the contract, and it was so held by this court in the Coggeshall Case, just cited.

In the case at bar the contract was entered into long prior to the time the estimate could have been approved, because, under the law, the excise board could not meet and approve an estimate until the last Saturday in July of said year.

The estimate was not approved for Carter county until later, so that at the time of entering into the contract for the purchase of said culverts on July 2d, and at the time said culverts were delivered to defendant on July 17 (1928), no estimate had been made and approved for Carter county, Okla., providing any funds with which to purchase said materials.

The provisions of our law requiring an approved estimate or appropriation is a wholesome protection to the taxpayers of said political subdivision.

Persons having business with counties and municipalities at times become very zealous to secure a contract with the officials of said county and connive divers schemes to circumvent the law, so that the people through their representatives in the Legislature passed chapter 49, Session Laws 1925, thereby placing certain limitations and restrictions upon their agents, who have been elected to represent the people.

The laws, as passed by the Legislature, serve notice on all persons dealing with officials of the various political subdivisions of the necessary requirements of a good and valid contract, such as could be enforced in a court.

The following requirements are necessary before a valid and binding contract can be made between any person and the board of county commissioners affecting any money under the control of the board of county commissioners in the county highway fund:

First, an appropriation must have been made by the board of county commissioners, and approved by the excise board of said county making an appropriation for the kind of work or material sought to be covered in said contract.

Second, the records in the county clerk's office must show an unexpended balance in said appropriation equal to or more than the amount of the contract sought to be made.

Third, the contract or purchase order must be signed and certified to by the county clerk, certifying that there is an unexpended balance in said appropriated fund to pay the amount of said contract.

The failure of any one of the above requirements voids the contract.

It was the intention of the Legislature in enacting said legislation to place positive

restrictions upon the agents of the people and those dealing with said agents. The restrictions are for the protection of the taxpayers of said subdivision and must be so construed by this court.

The expenditure must be within a lawful appropriation made and approved by the excise board. There was no valid estimate made and no funds in the appropriation with which to purchase said material, and said contract was not approved by the county clerk showing an unexpended balance in an estimate or appropriation with which to pay for said materials, so that the contract was absolutely void.

Defendant presents three additional propositions in support of the holding of the trial court, the second of which propositions is that the contract was invalid because in excess of $500, and because the same was not publicly advertised and let at public letting.

We also observe from the record that plaintiff evolved the nefarious scheme of presenting the amount due on said contract in some 29 claims, each of which was under $500, but, since we have disposed of said matter, we do not consider it necessary to devote further time to the propositions presented by defendant in support of its side of said cause.

We find no error in the judgment of the lower court, and the same is hereby affirmed.

SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.