### NEBRASKA BRIDGE SUPPLY & LBR. CO. v. WRAY TOWNSHIP, JEFFERSON COUNTY, et al.

No. 25196.   Jan. 7, 1936.

J. P. Speer, for plaintiff in error.

Earl Pruet, County Atty., for defendants in error.

CORN, J. The plaintiff's petition contains three causes of action, each of which seeks to recover for bridge materials sold and delivered to Wray township, a subdivision of Jefferson county. The total amount involved in the three causes of action is $498.05. The defendant filed an answer which contained a general denial, an allegation that the claims were illegal, unauthorized, unconstitutional, and void for the reason that at the time the purported purchase contracts were made the appropriation for Wray township had not been approved by the excise board, as provided by

sections 5970, 5971, and 5972, and an allega_tion that the claims upon which plaintiff predicated its petition were illegal, unauthorized, unconstitutional, and void for the reason that the purported purchase contracts were entered into prior to the expiration of the protest period in violation of section 12315, O. S. 1931.

For the fiscal year beginning July 1, 1932, and ending June 30, 1933, a financial estimate of the needs of Wray township was properly prepared, published, and filed. On August 15, 1932, the excise board of Jefferson county met and approved the estimates of Wray township to the extent of 25 per cent. of the estimate. On October 12, 1932, the excise board approved the estimates in full. Thereafter and on October 21, 1932, the estimates as approved were filed with the State Auditor of the state of Oklahoma, the statutory protest period therefore expiring on November 30, 1932.

Between September 17, 1932, and September 26, 1932, purchase orders were given to the plaintiff for certain bridge materials. The plaintiff promptly delivered these materials and the defendant used the same during the balance of its fiscal year. On December 31, 1932, township government was abolished, and the affairs of the township were taken over by the board of county commissioners of Jefferson county. On January 31, 1933, the plaintiff filed claims for the materials furnished with the county clerk of Jefferson county.

The evidence at the trial disclosed that ample appropriations had been made by the excise board in the appropriate funds to pay the claims presented by the plaintiff. It also showed that after deducting all prior purchase orders executed by the township officials prior to September 26, 1932, there were still ample funds to discharge any proper indebtedness of the township that might be due and owing to the plaintiff. No contention is made that the township officials contracted or attempted to contract indebtednesses in excess of the appropriations subsequently approved by the excise board of Jefferson county.

The defendant contends that the purchase orders obtained by the plaintiff failed to comply with sections 5970, 5971, and 5972, O. S. 1931, which are as follows:

"5970. County and municipal officers and boards of commissioners having authority to purchase supplies, material and equipment and let contracts for public work, shall submit all purchase orders and contracts to the officer charged with keeping the appropriation and expenditure record of the county or municipality, who shall, if there be an un_incumbered balance in the appropriation made for that purpose by the excise board, so certify by signing the purchase order or contract; provided that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality. Provided, further, that the provisions hereof shall not be construed to relieve the excise board of its duty to make a sufficient appropriation to pay for the printing and publication of the county commissioners' proceedings, the financial estimates of the county and townships, the cost of publication of the personal tax assessment list, delinquent personal tax list, the list of sale of real property for delinquent taxes, and notice of resale of real estate for delinquent taxes.

"5971. The cost of all supplies, material and equipment and the contract price of all public work shall be charged against the appropriation as made by the excise board at the time purchase is made or contract let, and no contract shall be made for the purchase of supplies, material, equipment, or maintenance for any department of county and municipal government during any fiscal year in excess of the estimate and levy as made by the excise board.

"5972. The clerk of each county or municipality in the state of Oklahoma shall keep a record in which shall be kept an exact account showing the purpose and amount of each appropriation as made by the excise board for the maintenance and operation of the respective county and municipal departments of government. The amount and purpose of each purchase order or requisition filed and certified for payment shall be charged against the appropriation as made by the excise board at the time purchase is made or contract let, and the balance in the appropriation account after such charges are deducted shall constitute the unincumbered balance available."

It is obvious that the purchase orders, upon which plaintiff predicated its cause of action, were made and entered into prior to the time an appropriation was made by the excise board and prior to the time the protest period expired. At the time the purchase orders were obtained, an estimate had been made by the township officers for the full amount contained in the purchase orders, and the excise board had made an allowance of 25 per cent. of the estimate, which was not sufficient to cover the entire amount contracted for.

In Austin-Western Road Machinery Co. v. Board of Commissioners of Carter County, 160 Okla. 232, 11 P. (2d) 117, this court held, in regard to chapter 49, Session Laws 1925:

"Section 1 of the act just quoted gives the board of county commissioners authority to purchase supplies, material, and equipment, but they shall submit all purchase orders and contracts to the officer keeping the appropriations so that they may ascertain whether there is an unincumbered balance in said appropriation, provided 'that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality.'

"By section 2 of said act, the Legislature provided the method whereby said accounts should be kept so that the same would reflect the amount remaining in said account subject to expenditure.

"This court had chapter 49, supra, under consideration in the case of Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48, and at page 15 of Okla. Reports (285 P. p. 55) this court said:

"'At one time in Oklahoma public officials entered into contracts without regard to the amount of the appropriations made. They acted on the theory that the inhibition in a statute applied only to the issuing of warrants against the appropriation. The result of this was to exhaust the appropriation by the issuance of warrants leaving contracts entered into prior to those for which the warrants were issued without any appropriation for the payment thereof, and judgments were then taken on these prior contracts. By this means municipalities expended more money than was appropriated.'"

The Legislature of this state repealed chapter 49, Session Laws 1925, by enactment of chapter 32, Session Laws 1931, which is carried as sections 5970 to 5975, inclusive, O. S. 1931.

The above statutes are in their provisions identical to chapter 49, Session Laws 1925. We, therefore, hold that the reasoning of the Austin-Western Case cited above must be followed in the interpretation of the more recent statute.

The purpose of section 5970, supra, adopted by the Legislature in 1931, is that no contract shall be made and entered into prior to the time an appropriation has been made by the excise board for that particular and specific purpose, and so certified by the officer charged with keeping the appropriations and expenditure records of the county or municipality.

Defendant claims the contract is in violation of section 12315, O. S. 1931. That section, in so far as it is material in this case, reads as follows:

"* * * Pending the expiration of the time within which protests may be filed with the State Auditor, no warrant shall be issued or debt contracted by any municipality for any purpose except as provided hereinafter. * * *

"Townships: For salaries and compensation of officers; for office supplies, blank books, stationery and printing; and for compensation of supervisors. * * *"

It is stipulated in the record that the 40-day protest period provided for in section 12306, O. S. 1931, did not expire until November 30, 1932, more than two months after the purported purchase orders were executed. The question arises as to whether said sections of the statute are mandatory, or merely directory. In view of the underlying reasons for the passage of such legislation, we hold that said sections are mandatory and that any debt (excepting those specifically authorized by the statute) incurred during such 40-day protest period and which does not also comply with sections 5970, 5971, and 5972, supra, is illegal and unenforceable.

The plaintiff in its brief urges that even though such purchase orders at their inception be unenforceable, they are voidable rather than void, and that by subsequent appropriate action the board of county commissioners of Jefferson county, as successors to township trustees of Wray township, could ratify the purchase orders, and that they have so ratified such contracts. Numerous authorities have been cited in support of that contention, but none of them are in point, as they relate to cases prior to the enactment of the sections of the statutes, supra.

It is urged that it is unjust to deny recovery to persons who in good faith have furnished valuable merchandise to municipal subdivisions of the state. But he who furnishes goods, wares, merchandise, or labor under contracts, express or implied, with municipal subdivisions of the state, must ascertain at his peril whether officials purporting to act for the municipal subdivision of the state have the power to bind such municipal subdivision. The statutes lay a penalty upon such officers exceeding

458

their authority, by making them and their bondsmen personally liable for the merchandise purchased.

It has been pointed out that the excise board of each county meets on the last Saturday of July and if no indebtedness can be incurred by the municipalities until after the 40-day protest period expires, such construction placed upon the statutes will seriously hinder and embarrass the ordinary administration and conduct of business required of such municipal subdivision.

If the Legislature, in protecting taxpayers against excessive and unauthorized contracts entered into by the various county and municipal officials, has enacted statutes which cripple, embarrass, or delay the orderly conduct of business in said municipalities, then the necessary remedy will have to be obtained from the Legislature and not from this court.

The judgment of the trial court is therefore affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, and GIBSON, JJ., concur. RILEY and PHELPS, JJ., absent.