## STATE FOR USE OF FIRST STATE BANK OF WISTER et al. v. BOARD OF COUNTY COM'RS OF LE FLORE COUNTY.

No. 25927. June 2, 1936.

Rehearing Denied Sept. 22, 1936.

T. H. Ottesen and Babb, Bennett & Babb, for plaintiffs in error.

Cruce & Satterfield and James B. McDonough, for defendants in error.

Cornish & Cornish, amici curiae.

WELCH, J. This action was commenced by the First State Bank of Wister, Okla., as sole plaintiff, against the board of county commissioners of LeFlore county, as sole defendants. The suit was originally brought to recover judgment on 13 county warrants, alleged to have been lawfully issued. Four of the warrants were drawn against the general fund of the county, and nine were against the county highway fund. The suit was subsequently dismissed as to the four general fund warrants. Two of the county highway fund warrants were paid before issues were joined, and the suit was dismissed as to them. The petition alleges that at the time said warrants were issued they were within an appropriation for county highway purposes, and that after their issue they were assigned to plaintiff bank for a valuable consideration; that they had been presented for payment, and payment refused on the stated ground that there were not sufficient funds on hand to pay same. Thereafter a supplemental petition was filed whereby Fred M. Robertson, the Commercial Casualty Insurance Company, and the National Surety Company were made parties defendant.

Thereafter a second amended petition was filed, wherein the state of Oklahoma, for the use and benefit of the State Bank of Wister, was made a party plaintiff. This was done apparently because plaintiff thought that the cause of action against the county treasurer and his sureties on his official bond could be prosecuted only in the name of the state of Oklahoma.

In the meantime the Kansas City Southern Railway Company and the receivers of the St. Louis & S. F. Railway Company,

as taxpayers, obtained leave to intervene and defend the action against the county.

After the plaintiff filed its last amended petition, defendants Roberson and his sureties and the board of county commissioners presented an application for an order to set aside the previous order requiring them to answer, for the purpose of permitting them to file a demurrer to the third amended petition, as further amended. This application was allowed without prejudice to a trial if such demurrer should be overruled. Thereupon the court heard and considered the separate demurrer of Roberson and his sureties, and sustained the same.

The demurrer of the board of county commissioners was overruled.

Thereafter the cause was tried to the court without a jury, resulting in a judgment for plaintiff against the county on one of the warrants, and for the defendant on the remaining six warrants, and plaintiff appeals. A cross-appeal was taken as to plaintiff's judgment on the one warrant.

There are some assignments of error based upon the action of the court in permitting the refiling of demurrer and passing upon them, but we deem it unnecessary to consider or determine those questions. The real issue is whether the county is liable on the warrants involved, and we proceed to consider that.

To defeat liability on the warrants the county asserted that the claims upon which the warrants were issued were not properly verified in accordance with the provisions of section 7670, O. S. 1931; and that the absence of verification, or the presence of a defective or incomplete verification, would render void the warrant issued in payment of the claim.

In determining the question we should bear in mind the well-established principles of law that all public officials are presumed to perform their duties, and that a municipal warrant is prima facie evidence of the validity of the claim for which it was issued.

In City of Sulphur v. State ex rel. Lankford, Bank Com'r, 62 Okla. 312, 162 P. 744, it was said in paragraph 3 of the syllabus:

"It is a presumption of law that all public officers perform their duty, and in the absence of clear proof to the contrary this court will refuse to hold that they did not do so in issuing warrants for claims against municipalities."

And in paragraph 6 of the syllabus:

"A municipal warrant is prima facie evidence of the validity of the claim for which it was issued, and if in an action instituted by the owner and holder thereof the municipality asserts as a defense a violation of some constitutional or statutory provision, the burden of proof is upon the municipality to clearly establish by competent evidence that at the time the debt was created for which said warrants were issued, the governing body of the municipality violated the provision of the Constitution or section of the statute relied upon."

Those two paragraphs of the syllabus are supported by prior decisions cited in the opinion, and by numerous subsequent opinions of this court.

This helpful text of the duties, powers, and authority of the board of county commissioners, and the allowance of claims generally, is found in 15 C. J. page 649, paragraph 363:

"So also the statutes in a number of jurisdictions require that the claim shall be verified before presentation for allowance by the claimant or someone having personal knowledge of the facts. Such statutes as to verification, in cases where they are applicable, impose a jurisdictional and mandatory requirement in the sense that there must be at least a substantial compliance therewith."

Our statute requires a verification of claims, and the case of Allen v. Pittsburg County, 28 Okla. 773, 116 P. 175, is cited as authority for the statement in the quoted text. That case was relied upon by the trial court in the instant case in rendering judgment for the defendants upon some of the warrants here. It is the case chiefly relied upon by the proponents of the proposition that the claims involved herein were not verified in accordance with the statutory requirements.

We have carefully examined the Allen Case and note therefrom that the account is referred to as "not in any way having been verified by affidavit. * * *" We observe also the following from the opinion: "At its regular session in April it was disallowed, no reason being assigned therefor on the record. Neither was there any evidence heard as to the correctness, etc., of the same." It is pointed out in the opinion that the statute requires certain things to be done before the board of county commissioners can properly entertain a claim. That these requirements are mandatory directions to the board is also set forth therein. It is pointed out that the board of county commissioners assigned no reason for disallowing the claim, thus strongly indicating that the court indulged the presumption that the

board followed the directions of the statute and failed to entertain the claim or declined to allow it because not verified, and that the disallowance thereof was not on the merits, and for that reason should not bar claimant from thereafter filing a claim strictly proper in every detail and having it considered on its merits. The case implies that had evidence been taken and heard on the merits of the former claim, the conclusion there might have been different. We are not inclined, however, to consider the case as authority for the proposition that the board of county commissioners is wholly without authority to consider the claim except when prepared in every respect in minute and literal compliance with all the requirements of law. The remark therein contained that there was not evidence as to the correctness, etc., of the same would indicate that the court had no disposition to apply the rule of strict compliance in the matter of claims considered by the board on their merits and allowed, when the same have been prepared and filed in substantial conformity with the requirements of the statute, and we think the court therein, in applying the rule of strict construction or strict compliance with the statutes, had in mind the thought that the board of county commissioners properly refused to consider the claim because of a failure to verify, and that the board was justified in so doing. The decision at most can be said to be authority only in the case of a claim where there was a complete failure to verify and no substantial attempt to comply with the law in that respect had been made.

"The positive authority of a decision is coextensive only on the facts on which it is founded, and it can apply only in subsequent cases in which the issues are similar." 15 C. J. parag. 332, page 941.

And as was said in Tyson & Bro. Ticket Offices v. Banton, 273 U. S. 418, 435:

"There is some general language in the opinion which, superficially, might seem broad enough to cover cases like the present one, * * * but in accordance with the well-settled rule the words must be limited to the case under consideration."

And so we think it is the clear policy of the law in this state, as disclosed by the Allen opinion, supra, and by an examination of the facts, results, and intendments of many other decisions of this court, including the case of McEwen Mfg. Co. v. Town of Covington, 112 Okla. 40, 239 P. 219, that a verified claim must be filed as a prerequisite to one's absolute right to require affirmative action on a claim against the current expense accounts of municipalities, and that the claim must conform strictly in every particular with all of the requirements of the law in that regard before the claimant may demand action thereon by the board. We also think the law intends the board to require a compliance with this statute before it assumes to act upon any claim. Consequently in all actions wherein the disallowance of a claim is shown without action upon the merits, the rule of strict compliance with the statutory requirements may be invoked and followed as in the Allen Case.

Where, however, a board of county commissioners has, without fraud or other omissions substantially affecting the rights of the county, or without violation of a substantial public policy, assumed jurisdiction of a claim prepared in substantial though not literal compliance with the statutes in such cases, and has acted favorably thereon and allowed the same upon its merits, and has issued a warrant therefor to pay a just obligation otherwise legal, then we are of the opinion that in after years the warrant should not be subject to defeat merely because of some trifling error in the verification of the claim.

The sufficiency or insufficiency of a verification, although defective and the sufficiency or insufficiency of the contents of the affidavit, although not in strict conformity with the statute under such circumstances as here considered, appear not to have had the direct consideration of this court heretofore.

In order to defeat the warrant there must be shown a material omission or violation of the law affecting substantially the material rights of the county, or substantially affecting the fiscal policy of the state as declared by the statutes in such a manner as to cause grave possibility or probability of financial mismanagement. It is of considerable importance that warrants issued by the various municipalities of the state be left as free from attack by reason of harmless irregularities leading up to their issuance as the fundamental safety of the financial affairs of the state and its subdivisions will permit. Our fiscal policy permits the making of obligations, the allowance of claims, and the issuance of assignable interest-bearing warrants in advance of the receipt of actual cash to pay. Legitimate investment in these warrants is unmistakably helpful to the functions of our governmental affairs and promotes and aids our fiscal policy. The holder of these warrants takes same as prima facie evidence of their validity and

relies upon the presumption that the public officers in issuing them performed their duty in a lawful manner; and while it is true that a substantial violation of law or irregularity in their issuance may be asserted as a valid defense against the same, we are of the view that the integrity of warrants is important to our financial or fiscal public policy, and that they may not be defeated for mere formal irregularity which effects no substantial right.

As to the warrant upon which judgment was rendered for the plaintiff, the facts show that the claim was in strict compliance with the statute with reference to verification, except as follows: In the words of the statute the claim "shall be verified by affidavit setting forth that the same is just and correct and remains due and unpaid," whereas the words employed in the affidavit were "that the above account is just and unpaid."

Another claim is composed of three separate invoices, each of which is verified by the agent of the company to whom the warrant was originally issued, and these invoices are attached to the claim proper, which is signed by the name of the company "by J. B. M.", and the claim proper appears to be sworn to before the county clerk by the person who initialed the same. The affidavit as to another of the claims, instead of being in the words of the statute as above shown, is in the following form, "do solemnly swear that the above account is correct, due and unpaid to the best of my knowledge," and is sworn to before a notary public by L. W. Gibson. Others of the claims show the affidavit to have been signed as follows: "Quality Bridge Paint Co. by Ray (illegible)," and sworn to before a notary public of Oklahoma county, although the jurat thereto appears as LeFlore county. The affidavit also is in the same form as shown by the claim for the warrant upon which judgment was rendered for plaintiff. Another claim, the affidavit of which does not exactly follow the language of the statutes, is signed by the name of the company by Roy Z. Taylor, and sworn to before a notary public.

In view of what we have said, and in consideration of the facts here which disclose a substantial compliance with the requirements of the statute as to the verification and the contents of the affidavits and claims, we conclude that all of the warrants herein involved, except the warrant involved in cause of action No. 7, were issued for claims prepared, filed, and allowed in substantial compliance with the statutes.

It is not necessary to determine whether the warrants would be void if the verification on the claim was wholly absent or so defective as not to constitute a substantial compliance with the statute.

The warrant sued upon in the 7th cause of action was issued to a certain iron company purportedly in payment for certain items of merchandise. The evidence tends to show that that company never sold these items to the county or to any of its officers; that the company did not hold or claim any account against the county, that it did not file any claim with the county clerk nor authorize any one to do so; that it never received the warrant nor indorsed it, and did not receive any of the proceeds thereof, that as to this item, the claim, wholly unverified, was filed by a person who signed by his initials only, who had no authority to represent the company, but who did receive the warrant and without authority indorse and transferred it to the plaintiff. We, therefore, find no error in the action of the trial court in refusing judgment upon the last-named warrant.

Another contention is that the warrants sued upon were issued upon or in payment of prior contracts entered into without strict compliance with chapter 49, S. L. 1925, and particularly section 1 thereof. It is admitted that the contracts were not submitted to the officer charged with keeping the appropriation and expenditure records of the county, and that he did not indorse thereon his certificate to the effect that there was an unincumbered balance in the appropriations made for the purpose. The defendants contend that by reason thereof the contracts were void and that the warrants issued in payment thereof were likewise wholly void and of no effect.

The question thus raised necessitates the construction of the applicable provisions of chapter 49, S. L. 1925, in connection with the facts here, and in so doing we are chiefly concerned with sections 1 and 2 thereof, which we quote as follows:

"Section 1. County and municipal officers and boards of commissioners having authority to purchase supplies, material and equipment and to let contracts for public work, shall submit all purchase orders and contracts to the officer charged with keeping the appropriation and expenditure records of the county or municipality who shall, if there be an unincumbered balance in the appropria-

tion made for that purpose by the excise board, so certify by signing the purchase order or contract; provided, that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality.

"Section 2. The cost of all supplies, material and equipment and the contract price of all public work shall be charged against the appropriations as made by the excise board at the time purchase is made or contract let, and the balance in the appropriations account after such charge is deducted, shall constitute the unincumbered balance available for expenditure."

In construing these legislative provisions with a view of ascertaining the consequences resulting from a failure on the part of one contracting with the municipality to comply strictly with the terms thereof, we deem it proper to consider the object and purpose of the enactment so that we may determine whether it was the legislative intent to exclude all possibility of contractual liability on the part of the municipality, except in strict compliance with the terms thereof. Brown v. Woods, 2 Okla. 601, 39 P. 473; In re Cleveland's Claim, 72 Okla. 279, 180 P. 852; Blevins v. W. A. Graham Co., 72 Okla. 308, 182 P. 247; Grayson v. Thompson, 77 Okla. 77, 186 P. 236, and Carlile et al. v. National Oil & Development Co. et al., 83 Okla. 217, 201 P. 377.

In arriving at the object sought to be accomplished by the Legislature in the passage of the act, we examine the provisions of the law in respect to the making of contracts of this nature prior to its passage. At that time the municipal officers could not contract in excess of the appropriations made for the specified purpose. In this respect chapter 49, supra, made no material change. Walker Taylor Co. v. Board of County Com'rs of Oklahoma County, 125 Okla. 226, 257 P. 324.

The act did provide for the keeping of additional records for the purpose of more clearly reflecting day by day the unexpended balance to the credit of any appropriation, and in this respect it was a mandate to municipal officers as to bookkeeping methods and possibly an extension of the scope of public records in that regard, but prior to the passage of the act it cannot be doubted that it was then the duty of the municipal officers to keep suitable records which would inform them of the true condition of the appropriations accounts. And as regards these

matters to which we have already referred, we observe little, if any, change in the existing law by the passage of said act. Prior to this enactment it was existing law that a person desiring to sell to the municipality, or to contract in the manner shown by the facts here, could enter into a valid contract with the municipal officers, subject, however, to the condition that the contract must be within an unexpended balance of appropriations for the purpose at the time the contract was made. When such a contract was entered into, assuming it to be valid otherwise, it then became a valid and binding contract against the municipality and a definite and fixed charge against the appropriation, and it mattered not whether the appropriation might be thereafter exhausted by other contracts and the issuance of warrants. It was necessary only for the establishment of his claim that he prove that at the time the contract was entered into there was an unexpended balance of appropriation for the purpose, in which event he was entitled to judgment against the municipality even though the whole appropriation might have been otherwise spent, although unlawfully. This condition of the law is reflected in numerous decisions of this court. Among them are Buxton & Skinner Stationery Co. v. Board of Com'rs of Craig County, 53 Okla. 65, 155 P. 215, wherein it was held in paragraph 2 of the syllabus as follows:

"The board of county commissioners of the county of C. entered into a contract with B., pursuant to the terms of which the latter furnished the officers of said county certain supplies covering the period beginning on the 1st day of October, 1912, and ending on the 19th day of January, 1913. On the first date there was unexpended of the approved estimate of the supply fund for the fiscal year 1912-13, the sum of $6,000; and on the latter date the sum of $1,500. On the 30th day of April, 1913, B. presented his claim for payment, and the same was disallowed for the want of funds; the supply fund in the meantime having become exhausted. Held, that the indebtedness was created at the time the contract was made and supplies furnished, and not when the claim was presented for payment. Held, further, that the claimant is entitled to judgment against the county for the amount of his claim."

The opinion there is clear in theory and the proposition of law is ably and thoroughly discussed. See, also, Fairbanks Co. v. City of Sulphur, 62 Okla. 10, 161 P. 811, and Consolidated School District No. 2 v. Arlington School Supply Co., 148 Okla. 299, 298 P. 1052.

It is to be observed from the cases just cited that the contractor therein was entitled to judgment for the reason that the law permitted him to make a valid and binding contract, if at the time he did so there was an unexpended balance of appropriations in sufficient amount, and his rights could not be thereafter affected by some illegal expenditure of the funds after his contract had become valid and binding. In those cases the gist or test of the validity of the contract was whether or not the appropriation was sufficient at the time the contract was made. This resulted in a very unsatisfactory condition, in that it promoted or made possible the illegal expenditure of funds by the municipal officers, usually on account of negligence or failure to sufficiently inform themselves regarding the condition of appropriation accounts before entering into additional contracts.

Eminent counsel for both plaintiff and defendants assert their belief that chapter 49, supra, was designed solely for the elimination of this unfortunate condition. We are of the same opinion after careful consideration of the briefs and on independent investigation of additional authorities. Indeed, this court has already so expressed its opinion in Western Paint & Chemical Co. v. Board of Com'rs of Washington County, 171 Okla. 302, 42 P. (2d) 533, wherein it is said in reference to section 1 of the act:

"That was wholesome legislation designed to prevent the very thing here presented, i. e., a dual contract in value against a single sum appropriated and a resulting payment of one contract by warrants and the other by judgment."

We think there can be no doubt that the object sought by the Legislature in passing sections 1 and 2 of the act was primarily, if not solely, to prevent expenditure of funds in excess of appropriations, and the accrual of liability in excess of the income and revenue provided for the year.

Sections 1 and 2 of the act contain wholesome legislation, and a proper construction of same will and does lead to the result sought by the Legislature, as we have noted. Let us see in what manner the act materially changed the law as it existed prior to its passage. It is readily apparent from an examination of same that the mere entering into the contract with municipal officers within the unexpended balance of appropriations prior to the passage of the act fixed liability upon the municipality, irrespective of what might thereafter occur with respect to the further expenditure of the appropriation. Under sections 1 and 2, chapter 49, supra, the mere entering into the contract within the unexpended appropriation does not of itself fix the liability, irrespective of what might thereafter occur, and to that extent the contract entered into is not valid and binding as it would have been prior thereto. The liability against the municipality does not then become fixed, but it does not necessarily follow that there cannot be a contractual relation which may thereafter become a fixed liability, dependent upon the condition of the balance of appropriations as of a future date. This principle is clearly recognized by this court in State ex rel. Roland et al. v. Board of Com'rs of Carter County et al., 160 Okla. 276, 16 P. (2d) 104, where there could have been no compliance with chapter 49, supra. The act does not provide that the contract, or the effort to contract, will be void or illegal, it merely provides that it cannot be a valid contract—it cannot then be a complete contract definitely fixing liability—it is subject to contingencies that did not formerly exist. It does provide a method, however, whereby the contract becomes valid and free from the contingencies mentioned, and a fixed liability against the municipality. That result may be accomplished by presenting the contract or purchase order to the keeper of the appropriations account and having him indorse and certify thereon that the same is within the unexpended balance of the appropriation, and when that is done, if the certificate reflects the true fact, the contract then has the same status as the contract we have discussed which might have been entered into prior to the passage of the act.

The liability is then fixed against the municipality in so far as concerns the condition of the appropriation at the time, irrespective of what may transpire thereafter. It was provided by the Legislature that the municipality would have a constant record of fixed liability against all appropriations made and entered at the time the liability became fixed, thus giving notice to the municipal officers and to all parties seeking to deal with them of the exact fixed and determined liability existing against the several appropriations.

It is apparent then that when the Legislature used the words, "provided that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer, * * *" it was not intended thereby to provide that the contract would be absolutely void, but we hold, rather, that by the words, "* * * No pur-

chase order or contract shall be valid, * * *" is meant merely to change the rule of law which up to that time made the contract from the date of its execution, and by its execution alone, a fixed liability against the municipality and the specific appropriation.

Webster defines the word "valid" as "having legal strength or force; executed with proper formalities; legally sufficient or efficacious; incapable of being rightfully overthrown or set aside, as, a valid deed, covenant, title, marriage." The word "valid," as used in section 1, supra, means that no contract will be or become incapable of being rightfully overthrown or set aside until the formalities prescribed thereby are complied with. Conversely it follows that the contracting party has a contract, but that the same is subject to the contingency of being rightfully overthrown if the funds in the appropriation become exhausted at any time before the liability upon the contract becomes definitely fixed and valid, or incapable of being disturbed or overthrown.

We, therefore, determine that the contract here is not declared wholly void and without effect by the terms of section 1 of chapter 49, S. L. 1925, but that it is only invalid and subject to be rightfully overthrown upon a showing of insufficient appropriations for the purpose of payment of same. We come now to consider whether there are other methods whereby the liability may become fixed, and the contract and liability become fixed and wholly valid and subject to no contingencies with regard to the sufficiency of the appropriation.

Section 5948, O. S. 1931, provides for the disbursement of public funds in payment of legal warrants, thereby implying authority to issue warrants.

Section 5949, O. S. 1931, makes it the duty of the officer authorized to allow, issue, draw, or attest any warrant to issue, draw, and record the same in numerical order as issued on each fund.

Section 5950, O. S. 1931, defines the term "estimate made and approved," and limits the amount of the issuance of warrants against the same.

Section 5952, O. S. 1931, provides that warrants may be issued to the amount of the estimate made and approved. The entire article 7 of chapter 32, O. S. 1931, including the specific sections we have just referred to, provides specifically for the issuance of warrants against specific appropriations, and provides in detail for the recording and registering of same.

Section 7656, O. S. 1931, provides for the county commissioners to keep a record of the warrants issued.

Section 7674, O. S. 1931, provides that the county commissioners shall pass upon claims and allow the same in full or in part, indorsing thereon, among other things, the fund against which the same was allowed.

Sections 7675, 7676 and 7677, O. S. 1931, provide for the keeping by the county clerk and the county treasurer of the details of the allowance of claims and the issuance of warrants and the funds against which the claim was allowed and the warrant issued. It cannot be doubted from an examination of these statutory provisions that warrants are issued against specific appropriations, and that when properly issued they immediately become a charge against the appropriation and the fund raised or which may thereafter be raised in connection therewith. Under these provisions of the law, when a warrant is properly issued, if otherwise valid, it definitely fixes the liability of the municipality issuing the same, and the same thereby becomes a fixed charge against the appropriation or "estimate made and approved," and there is unquestionably an ample record made which, upon casual examination, would disclose the condition of the particular appropriation and show the portion of the appropriation expended by that warrant.

Under the present law, when a claim is presented to the board of county commissioners, and a contract or purchase order upon which it is based was not submitted to the officer and indorsed and certified by him, as provided by section 1, chapter 49, supra, the board is not thereby prohibited from considering the claim and allowing it and issuing a warrant therefor. If the time in the fiscal year has arrived when appropriated funds may be contracted against or expended, and if the claim is for a legal purpose within an express appropriation for that purpose, it may be allowed and the warrant issued if at the time of the issuance of the warrant there is an unexpended balance of appropriation in that fund sufficient to care for the same. On that day the board could make a contract and by proper proceedings create a then fixed liability against the county, and nothing but the same result is reached when the board on that same day allows a claim and issues a warrant with proper record notations in reference thereto.

The sufficiency of the unexpended balance at that time must be determined by ascer-

taining the total warrants previously issued and claims allowed against the appropriation, together with the total contracts outstanding upon which a proper certificate has been indorsed as provided in section 1 of chapter 49, supra, deducting the total of these items from the total appropriation made. If there then remains a balance of unexpended appropriations, we know of no good reason for holding that the Legislature intended by chapter 49, supra, to prohibit the allowance of an otherwise valid claim and the issuance of a valid warrant therefor. The issuance of the warrant in such case can in no way exceed the income and revenue for the year as established by the "estimate made and approved" or appropriation, nor is it possible for the holder of an uncertified contract to thereafter establish its priority and obtain judgment therefor under the circumstances as existed in Buxton & Skinner Stationery Co. v. Board of Com'rs of Craig County, supra.

We cannot believe that it was the intent of the Legislature to enact a law which would have the result of defeating an otherwise valid claim and warrant, purely because of an omission to comply with a formal requirement thereof, which requirement was designed solely for the purpose of preventing a fixed liability to attach under a contract which would result or promote the accrual of liability in excess of the income and revenue for the year, when such omission could not and did not result in such liability.

It is urged that the words used in section 1 of chapter 49, S. L. 1925, to the effect that "no contract shall be valid'" mean literally that the contract shall be wholly void and a nullity and could never form the basis of a valid claim. Even so, a salutary rule of construction is announced in Town of Grove v. Haskell, Governor, 31 Okla. 77, 116 P. 805, paragraph 1 of the syllabus, as follows:

"When the literal enforcement of a statute would result in great inconvenience or lead to consequences which are absurd and which the Legislature cannot be held to have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which shall promote the ends of justice, and avoid the absurdity."

The evidence here is undisputed that there was an appropriation of $101,011.93, and the total warrants issued, claims allowed, and contracts or purchase orders allowed and certified total less than the appropriation. The omission in the instant case did not and could not have resulted in a violation of the substance of the act in question. It is true that the omission to procure the certificate referred to might have resulted in the rightful overthrowing of the contract, with consequent loss to the claimant, had the appropriation been exhausted by the allowance of claims, the issuance of warrants, or the procuring of the certificates required by section 1 of chapter 49 on other contracts and purchase orders prior to the issuance of the warrants herein sued upon. Such a condition is clearly shown in the Western Paint Company Case, supra, and Kansas City Southern Ry. Co. v. Marathon Oil Co. et al., 172 Okla. 371, 44 P. (2d) 356, where judgment was rightfully disallowed upon the claim and contract, but such condition does not exist here.

It is further contended that some of the warrants are void because they do not show on their face the amount appropriated and the amount of unexpended balance of the appropriations. This contention has been denied in Kansas City Southern Ry. Co. et al. v. First National Bank of Heavener, 171 Okla. 472, 43 P. (2d) 713. We quote paragraph 3 of the syllabus as follows:

"The failure of the county clerk to show on the face of a county warrant the unexpended balance does not render the warrant void."

It is further contended that some of the warrants are void because on the face thereof there is indorsed the words "time warrant." The evidence shows this to have been done in pursuance of an intention on the part of the public officials to indicate that they were nonpayable at the time of issuance—that cash was not then available to pay the same. It is apparent from the record that they were issued and delivered as warrants and were duly registered as such, and there is no proof that the holder thereof did not consider and believe them to be warrants in substantially regular form and subject to be paid when money was available therefor in regular order.

It is next urged that there was no appropriation against which any of the warrants could lawfully be issued, because the county highway fund appropriation was not itemized as provided by law. This same question was sought to be raised in Kansas City Southern Ry. Co. et al. v. Marathon Oil Co. et al., supra, and the court therein considered it unnecessary to pass upon the question. Here the condition of the appropriation is shown as a lump sum appropriation for county highway fund of $101,011.93 without further itemization.

Cases are cited wherein this court held

somewhat similar appropriations to be insufficient as to itemization. It is observed, however, that these cases involve tax protest questions and the attack in each case was a direct attack as provided by law. It may be that the appropriation is not sufficiently itemized to withstand such an attack or other timely direct attack for the purpose of compelling compliance with the law requiring itemization, but we think the same is sufficient in an action of this nature. The warrants here are highway fund warrants and were issued within the limits of the highway fund appropriation and for highway fund purposes, and it is not shown that the specific purpose for which they were issued was otherwise limited by the appropriating body.

The further contention is made that the warrant upon which the trial court granted judgment for plaintiff is illegal because issued in payment of a contract in excess of $500 made without public letting and without receiving competitive bids therefor. Section 7662, O. S. 1931, is alleged to have been violated thereby. That section is not applicable for the reason that the same relates to the letting of contracts for public work other than as provided in the chapter on roads and bridges.

Section 10358, O. S. 1931, is also cited in this connection. The warrant was issued in payment of a claim for road machinery purchased, and neither of the cited sections of the statute is applicable thereto, as they do not include the purchase of such machinery.

It is also contended that the purchases and contracts, as made and entered into, were void because made and entered into by individual members of the board, and not by the board acting as such. The evidence on the point is not clearly set out in the briefs, and the record does not disclose that sufficient proof was offered to sustain the contention. It would seem that some of the orders were placed by individual members of the board, but it appears certain that the board authorized the action or ratified the same upon the formal approval of the claims. We find no merit in this contention. See Ticer v. State ex rel. Holt, 35 Okla. 1, 128 P. 493.

It therefore follows that the judgment of the trial court, in so far as it granted judgment in favor of the plaintiff upon the one warrant, and in so far as it denied plaintiff judgment upon the warrant sued upon in the 7th cause of action, is in all things affirmed. In other respects the judgment is reversed, and the cause is remanded, with instructions to render judgment in favor of plaintiff upon the other warrants involved.

OSBORN, V. C. J., and BAYLESS, BUSBY, and PHELPS, JJ., concur. RILEY and CORN, JJ., dissent.

RILEY, J. (dissenting). It is my view that the decision herein does violence to the provision of chapter 49, S. L. 1925, and to the rule of law heretofore embraced in causes determined by this court.

It is admitted as to causes of action 2 to 7, inclusive, that there was no compliance with the requirement of chapter 49, S. L. 1925, in that the county clerk at no time certified that the purported purchase orders or contracts were within the appropriation. The Legislature undertook to require such a certification. The legislation reads:

"Provided, that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose, and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality."

In Central Nat. Bk. of Okmulgee v. Board of Co. Com'rs of Cherokee Co., No. 22733, September 25, 1935, 173 Okla. 606, 49 P. (2d) 195, where the action was based on county warrants prima facie valid, we held a purported purchase order or contract, forerunning the warrant, which failed to come up to these two requirements "cannot become the basis for the issuance of a legal warrant." In so doing we followed the rule in Western Paint & Chemical Co. v. Board of Co. Com'rs of Washington Co., 171 Okla. 302, 42 P. (2d) 533; Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48, and Austin Western Mach. Co. v. Board of Co. Com'rs of Carter Co., 160 Okla. 232, 11 P. (2d) 117.

I find no valid reason for departure from the rule now. Moreover, there was irregularity shown in the manner of entering into the purchase orders or contracts. It was shown that members of the board as individuals purchased, and such action has heretofore uniformly been held not to be considered as an action of a board.