**BLAKE, County Treas., v. ABRAHAM et al.**

No. 19599. Opinion Filed May 26, 1931.

W. F. Pardoe, Co. Atty., and S. A. Denyer, for plaintiff in error.

Gordon Stater, for defendants in error.

RILEY, J. This is an appeal from the

judgment of the district court of Creek county in an action brought by defendants in error against plaintiff in error to recover certain portions of the taxes for the fiscal year ending June 30, 1926, paid under protest by defendants in error, hereinafter referred to as plaintiffs. The city of Drumright levy for sinking fund purposes was 77.22 mills. Plaintiffs protested 40.90 mills of this levy as being in excess of the constitutional limit, and 14.96 mills as being unauthorized by law. They also protested 8.77 mills of the sinking fund levy of school district No. 39 as being "in excess of the constitutional limit."

These items, together with others, were paid under protest and suit was brought against the plaintiff in error, hereinafter referred to as defendant, to recover the amounts so paid.

The 40.90 mills item of the city of Drumright sinking fund levy was covered in plaintiffs' sixth cause of action, the 14.96 mills item was covered by the seventh cause of action, and the 8.77 mills item of school district No. 39 sinking fund levy by the ninth cause of action.

The cause was submitted to the court upon an agreed statement of facts upon which defendant conceded 17.81 mills involved in the sixth cause of action, and 1.26 mills involved in the ninth cause of action, for which judgment was entered, and that portion of the judgment is not in dispute. Judgment was entered for plaintiffs for an additional 13.36 mills of the item involved in the sixth cause of action, the full 14.96 mills item sued for in the seventh cause of action, and an additional 2.50 mills of the school district No. 39 sinking fund levy sued for in ninth cause of action.

Defendant appeals from the judgment as to the above-mentioned contested items and plaintiffs file a cross-petition in error as to that part of the sixth cause of action adjudged in favor of defendant, and as to the judgment in favor of defendant on the eighth and tenth causes of action. They also complain in their petition in error as to the 2.50 mills found in favor of defendant in the fifth paragraph of the journal entry going to the ninth cause of action, but this is evidently error, for the judgment as to that item was rendered in their favor.

Plaintiffs do not present their alleged errors as to the judgment on the eighth and tenth causes of action in their briefs, and they will be treated as abandoned.

That part of the judgment involved in the sixth cause of action contested here, namely 13.36 mills of the sinking fund levy of the city of Drumright, consists of two items: 11.96 mills levied to provide interest and accruals on judgment taken against the city of Drumright for expenses in the operation of its water department, and 1.40 mills for like purposes in a judgment for expenses incurred in the operation of the sanitary department.

The sole ground for the protest of all items in the sixth cause of action, aggregating 40.90 mills levy, was that the levy to that extent was made for the purpose of raising money to provide for the interest and accruals on the principal of certain alleged indebtedness of the city: a bond issue dated August 1, 1918, in the sum of $117,000, a funding bond issue dated August 1, 1922, in the sum of $171,000, and certain judgments taken against the city thereafter aggregating $109,082.72.

The petition attacked the validity of the levy for said purposes on the sole ground "that said interest and accruals on the aforesaid indebtedness was wrongfully included in the appropriation for said taxing jurisdiction for the reason that the aforesaid indebtedness when added to the other indebtedness of said taxing jurisdiction for said fiscal year exceeded the constitutional debt limit."

The agreed statement of facts upon which the cause was tried, stipulated that each of said bond issues was issued to retire warrants drawn in excess of the income or revenue of the city for the year of their issue, and that each of said bond issues, when added to the other indebtedness of the city at the time of their issue, exceeded the five per cent. constitutional debt limit, except as thereinafter stated. Upon this agreement, regardless of the exceptions referred to, it was stipulated that plaintiffs were entitled to recover to the extent of 17.81 mills heretofore referred to. The exceptions referred to in the agreed statement of facts are to the effect that $88,854.32 of the judgments attempted to be provided for in the levy were within the five per cent. constitutional debt limit, if the illegal and void portions of the two bond issues of $117,000 and $171,000, respectively, are not considered in computing the amount of indebtedness of the city at the time the judgments were taken and $20,228.40 of the judgments, representing a levy of 4.40 mills, was in excess in the five per cent. debt limit even though no part of the aforesaid bond issue is considered in computing the amount of indebtedness of the city. It was further stipulated that the judgments were based upon claims and warrants "in

excess of the total appropriated needs, but not in excess of the appropriation against which the claims or warrants were chargeable and at the time the indebtedness was created."

It is not clear what the words "appropriated needs" mean, unless it was intended to say "estimated needs" instead of "appropriated needs." It is difficult to understand how a warrant could be issued in excess of the appropriated needs, and at the same time be within the appropriations made for the same purposes. We understand that the "estimated" needs for a given purpose may sometimes be in excess of the appropriation finally made for such purpose.

It is further stipulated that in case the court should hold that the judgments levied for which were taken on warrants or claims for expenses of the water department were not to be counted in arriving at the indebtedness to be considered in determining whether or not the indebtedness exceeded the five per cent. limit, then none of said judgments were in excess of such limit.

It was further stipulated as to the judgment mentioned, $47,664.16 grew out of warrants and claims for the operation of the waterworks system in excess of the amount derived from charges made to consumers; that is, that the rate fixed for water service to the consumer was insufficient, to that extent, to pay the actual operating expenses, and that $4,897.85 of said judgments arose upon warrants and claims for and on account of the purchase of certain equipment in the sanitary department, and that such sanitary service was rendered to the patrons of the city without charge.

Defendant, while conceding these facts, contended that they were not competent to be considered under the protest filed and the pleadings.

It was further stipulated as a part of the exceptions to the statement relative to the amount of the two funding bond issues referred to as being within the five per cent. constitutional debt limit, that $42,000 of the $117,000 bond issue dated August 1, 1918, was within said limit, but that all in excess of $10,000 of said issues represented "warrants, claims, and padded interest thereon in excess of the income and revenue for the years in which they were issued as was shown by the funding bond proceedings and the financial statements and estimates filed with the excise board, and that all of the $171,000 funding bond issue of 1922 was wholly void for the same reasons," and "that a levy of 11.96 mills was included on said water department judgments aforesaid and

a levy of 1.40 mills was made for said judgment for the sanitary department, and that balance of the levy for judgments was 10.07 mills, or a total levy for judgments of 23.00 mills."

The trial court concluded that no part of the funding bonds should be taken into consideration in determining whether or not the judgments subsequently entered, or any part thereof, exceeded the five per cent. debt limit, and further held, in effect, that the judgments in question were not in excess of the five per cent. debt limit, but did hold that that part of the judgment representing claims and warrants for the operation of a waterworks system of the city of Drumright in excess of the revenues derived from the charges made for water service could not be provided for by ad valorem taxes, but could be provided for and paid only from revenue from said system. And also held that the judgments rendered on account of warrants and claims for the purchase of sanitary equipment could be paid for only from revenue derived from the sanitary department.

In this we think the trial court was in error, for if the judgments were for claims and warrants issued "not in excess of the appropriations against which said claims and warrants were chargeable," as stipulated in the agreed statement of facts, and were not in excess of the legal debt limit of the city when contracted for, then the same were valid judgments, and the levies made to care for same were properly made. The trial court did find and hold that the bonds should not be considered in determining whether the judgments did exceed the constitutional debt limit. This, we think, was correct with the possible exception of $10,000 out of a total of $288,000. It is contended, however, that since the judgments complained of, at least to the extent of $47,664.16 for waterworks purposes and $4,897.85 for equipment for the sanitary department, were for warrants and claims in excess of the income of revenue provided for that purpose in the year during which the indebtedness was incurred, the judgments were invalid under the holding of this court in Bristow Battery Co. v. Payne, 123 Okla. 137, 252 Pac. 423, and Eaton v. Frisco Ry. Co., 122 Okla. 143, 251 Pac. 1032.

The latter case is not applicable to the point here under discussion, for the reason that there only the question of indebtedness in excess of the five per cent. constitutional limit was involved. However, that case is applicable to a portion of the indebtedness as disclosed by another part of the agreed statement of facts hereinafter considered.

Nor are we able to find the Bristow Battery Company Case applicable here except as to the indebtednes in excess of the five per cent. debt limit.

From the agreed statement of facts it appears that an appropriation was made for the purpose of operating the waterworks system and the sanitary department of the city of Drumright and within which ·the warrants and claims for which the judgments, to the extent above noted, were rendered came; that the actual income was insufficient to pay the operating expenses for said year and that on account thereof the warrants issued and the claims mentioned were not paid. From the agreed statement of facts we are unable to determine whether the estimate of income from sources other than ad valorem taxes for the preceding year, presented to the excise board as a basis for said appropriations, showed sufficient income from such sources to justify the appropriation. For the purposes of this case, then, we must assume that it did, as it will not be presumed that the county excise board allowed and approved an appropriation without a sufficient showing of probable income from sources other than ad valorem taxes, together with a legal levy of taxes, to justify the same. The legality of the appropriation for these purposes being conceded, it follows that the warrants issued and indebtedness incurred not in excess of such appropriations were on their face regular and were valid. But it is urged that because of the provisions of section 4507, C. O. S. 1921, which in part provides:

"It shall be the duty of such city to fix the rates charged for service to the public, as nearly as practicable, so as to pay the interest and not less than three per centum per annum on the principal of such bonds in excess of the expenses of maintenance and operation"

—no city owning a waterworks system constructed with funds derived from a bond issue can incur any indebtedness by reason of the loss of operating such system, nor legally levy an ad valorem tax to pay such indebtedness.

Section 6, art. 18, of the Constitution gives every city in the state the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from such corporation. By section 9695, C. O. S. 1921, the mayor and council of each city, or the officers exercising like powers in cities having a charter form of government, are required to meet on the first Monday in July of each year and make, in writing, a financial statement showing the true fiscal condition of the municipality as at the close of the previous "fiscal" year, and an itemized statement of the estimated needs and probable income from sources other than ad valorem taxes for current expenses for the current year. From this financial statement and estimate the excise board fixes the amount of appropriations and determines the rate of levy necessary for ad valorem taxes. In so doing the excise board takes into consideration the estimate of income from sources other than ad valorem taxes. But by section 9699, C. O. S. 1921, it is provided:

"That in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year."

The several items as made and approved by the excise board constitute the appropriation of funds for the several specific purposes named in the estimate. And such appropriation thus made shall not be used for any other fiscal year or purpose whatever. No warrant or certificate of indebtedness in any form shall be issued, approved, signed, attested or registered on or against any appropriation for a purpose other than for which the appropriation was made, or in excess thereof. Section 9699, supra.

Warrants and certificates of indebtedness may be issued to the amount of the estimates (appropriations) made and approved by the excise board, but not in excess thereof. Sections 8635, 8636, C. O. S. 1921. But if warrants and certificates of indebtedness be issued to the full amount of the appropriation and the amount of money derived from ad valorem taxes and the income derived from other sources be insufficient to pay and retire such warrants and certificates of indebtedness, then the only way by which the deficiency can be paid is by funding in the manner provided by law, or by suit brought thereon and judgment obtained and a levy made to pay the judgment.

Now, as heretofore stated, the warrants and claims upon which the judgments were obtained were within the appropriation made as shown by the agreed statement of facts. We are asked to hold that the warrants thus issued were void and insufficient to support a judgment. This we cannot do. While it is true that section 4507, supra, provides that it shall be the duty of the city owning and operating a water system constructed by means derived from the sale of bonds to fix the rates charged to the public as nearly as practicable so as to pay the expenses of maintenance and operation, and in addition thereto sufficient to pay interest

and not less than three per cent. per annum on the principal of such bonds, it has never been held that the failure so to do would render any indebtedness incurred by reason of such failure void. But it has been held that the failure to fix rates sufficient to pay the interest and three per cent. per annum on the principal of the bonds, or the use of the profits if any derived from the operation of the utility for other purposes, does not render a tax levy for such purposes invalid. St. L.-S. F. Ry. Co. v. Andrews, 137 Okla. 222, 278 Pac. 617. It was held in that case that the Legislature could not take away from the city the right granted by the Constitution to engage in such business. Good business judgment would seem to require that the city should fix its rates such as to provide funds sufficient to pay the expenses of maintenance and operation of a waterworks system owned and operated by it. But suppose a city in all good faith should attempt so to do, and in preparing its financial estimate overestimate the probable income from the rates thus fixed, though basing its estimate thereof wholly upon the income derived from the same source for the next preceding year, would warrants issued within the appropriation, but in excess of the actual income, be void? We think not. There is no way to determine in advance with certainty what the income from any business enterprise will be for a year ahead. Experience has shown that very often the income of the state, counties, and other municipalities from sources other than ad valorem taxes decreases in greater amounts in one year from that of the previous year. The best foresight and business judgment are often unable to foresee such conditions, and it would be unwise indeed to base the validity of municipal warrants upon such uncertainties. The credit of municipalities would be greatly impaired thereby.

The Constitution, section 26, art. 10, however, places a limit upon the indebtedness a city may incur for such purposes, of which limit all persons dealing with such city must take notice. This limit is five per cent. of the valuation of the taxable property therein to be ascertained as therein provided.

Section 27, art. 10, of the Constitution permits an indebtedness in excess of this limit, when approved by a majority of the taxpaying voters, when the proposed indebtedness is for the purpose of purchasing, constructing or repairing public utilities to be owned exclusively by such municipality. But none of the indebtedness here involved is of such character.

One paragraph of the agreed statement of facts, not heretofore quoted, is as follows:

"It is further stipulated that there were included in the sinking fund requirements, including the ten per cent. allowance for delinquency, the sum of $8,316.20, representing the interest and installment on principal on two judgments aggregating $20,228.40, which judgments were rendered subsequent to the aforesaid bond issues, and that said judgments exceed the five per cent. constitutional debt limit though the aforesaid bond issues are not considered in computing the debt limit; and that the aforesaid sum of $8,316.20, represents a tax levy of 4.40 mills."

Then follows a further stipulation, which is in effect that if the indebtedness incurred by reason of failure of actual income sufficient to pay the expenses of operating the waterworks and sewer systems was valid, then none of the judgments, including the two last above referred to, were in excess of the legal debt limit. It is as follows:

"It is further stipulated that the aforesaid judgments were based upon claims and warrants which were in excess of the total appropriated needs, but not in excess of the appropriation against which said claims or warrants were chargeable, and at the time the indebtedness was created. It is also stipulated that in event the court holds that the judgments levied for, which were taken on warrants or claims for expenses of the water department, are not to be counted in arriving at the indebtedness to be considered in computing the 5 per cent. debt limit, then none of the judgments levied for were in excess of the 5 per cent. constitutional debt limit."

Having held that the waterworks and sewer system indebtedness was valid if provided for in proper appropriations for the fiscal year, it follows that, under that portion of the agreed statement of facts last quoted, the two judgments referred to, aggregating $20,228.40, were not in excess of the constitutional debt limit, and the 4.40 mills levy to provide therefor was valid. Then the total amount plaintiffs were entitled to recover on their sixth cause of action was the amount represented by the 17.81 mills levy which was stipulated to be invalid.

On the seventh cause of action the trial court entered judgment for plaintiffs for the full amount sued for, upon the theory that section 4507, supra, requiring the city to fix rates to provide income sufficient to pay the interest and three per cent. per annum of the principal of the bonds of a city issued to provide funds for the construction of a waterworks system, was mandatory, and that the levy made for such requirements was invalid to that extent. This was

the sole ground of the protest and for recovery set out in plaintiffs' petition. Plaintiffs concede that this question has been decided adversely to their contention. The question was so decided in St. L.-S. F. Ry. Co. v. Andrews, County Treas., supra, and the judgment as to this item, involving 14.96 mills of the levy, must be reversed.

The plaintiffs in their brief concede that the judgment entered in their favor as to the 2.50 mills involved in the ninth cause of action is erroneous under the authority of St. L.-S. F. Ry. Co. v. Hendrickson, County Treas., 128 Okla. 266, 263 Pac. 148, wherein it was held:

"That portion of a tax levy designed to create a tax and raise revenue to pay the interest and principal of municipal bonds not in excess of the municipal power is declared in section 26, art. 10, of the Constitution, is valid, and beyond that is invalid and void."

The holding in that case is decisive of the question, and the judgment as to the 2.50 mills involved in the ninth cause of action must be reversed.

The judgment is accordingly reversed as to the items involved in the sixth, seventh, and ninth causes of action, with directions to enter judgment in accordance herewith. In all other respects the judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. HEFNER, J., absent, not participating. KORNEGAY, J., not participating.