KURN et al. v. HELM, County Treas., et al.

No. 26862.    March 15, 1938.

Cruce, Satterfield & Grigsby, for plaintiffs in error.

Hayes, Richardson, Shartel, Gilliland & Jordan, for defendants in error.

HURST, J. Newman Helm, county treasurer of Pushmataha county, invested certain funds in his custody and control in nonpayable warrants theretofore issued by said county. Two classes of funds were so invested: (1) County sinking funds; and (2) county emergency funds accruing under the provisions of chapter 137, Sess. L. 1933. Collections from ad valorem taxes and other sources were insufficient to pay the warrants in which said funds were invested. Thereupon the county treasurer commenced this action against the board of county commissioners to reduce said warrants to judgment.

J. M. Kurn and John G. Lonsdale, trustees of the St. Louis-San Francisco Railway Company, as taxpayers, asked and obtained leave to intervene and defend in their own behalf and in behalf of other taxpayers. The county attorney, at the suggestion of the court, filed a general denial. Principal defense was made by intervening defendants.

Judgment was for plaintiff on substantially all the warrants, including those held in the county sinking fund and in the county emergency investment fund, with interest. On those warrants held in the county sinking fund, interest was allowed by the trial court at the rate of 6 per cent. per annum from the date of registration of the warrants to the date of judgment. Interest on the warrants held in the county emergency investment fund was allowed at the rate of 6 per cent. per annum from the date of their registration to the date of purchase by the county treasurer in the said county emergency investment fund. Intervening defendants appeal, making the county treasurer and the board of county commissioners defendants in error.

We will first consider the correctness of the judgment of the trial court as to the warrants held in the county sinking fund.

No contention is made that the county treasurer does not have the authority to bring an action on the warrants held by him in the sinking fund. His right to do so is settled by the case of City of Wilburton v. King (1933) 162 Okla. 32, 18 P.2d 1075.

It is first argued that interest upon outstanding general fund warrants of a municipality cannot be charged or collected in the absence of an existing and adequate appropriation therefor. This contention is based on section 26, art. 10, of the Oklahoma Constitution. In making this contention, defendant urges that the obligation to pay interest is contractual in nature, and is governed by the rule that a contractual indebtedness in excess of the appropriation, or in the absence of an appropriation therefor, is invalid. Chicago, R. I. & P. Ry. Co. v. Excise Board (1934) 167 Okla. 414, 30 P.2d 171, and Graves v. Board of Commissioners of Cimarron County (1934) 170 Okla. 282, 39 P.2d 532. Defendant further urges that the rule announced in the case of Smartt, Sheriff, v. Board of Com'rs of Craig County (1917) 67 Okla. 141, 169 P. 1101, is inapplicable. With this latter contention we agree, since we do not believe the rule announced therein applicable hereto. The facts in the case at bar disclose that for some of the fiscal years in question, no appropriation at all for interest on warrants had been made, and in others the appropriation made therefor was insufficient to cover the interest accrued on the warrants.

The rule applicable to this case is well stated in McQuillin, Municipal Corporations, Revised vol. 6, section 2383:

"Interest is not a debt, within the meaning of debt limit provisions, until it is earned and becomes due. And in determining whether an indebtedness will be created in excess of the debt limit, unearned interest cannot be added to the principal. The authority granted by the Constitution or statute to contract a debt refers to the amount of the debt at the date at which it is created, and has no reference to the amount of interest which will accrue thereafter."

It is not contended by defendant for the purpose of this assignment that the principal amount of the warrants sued on was not based on claims which were within an appropriation for such purpose at the time of the contraction of the obligations, and consequently same are valid obligations. In re Protest of Texas Pipe Line Co. of Oklahoma (1930) 143 Okla. 177, 288 P. 334. As such, and since they were registered nonpayable, they draw 6 per cent. interest as a statutory incident thereto. (Section 5951, O. S. 1931.) Ashland v. Culbertson, 103 Ky. 161, 44 S. W. 441. It cannot be said that the amount of the interest must be within an appropriation for that purpose, since under the rule stated by McQuillin, section 26, article 10 of our Constitution, has no reference to the amount of interest that will accrue after the creation of the principal obligation.

Although the question of the legality of allowing interest was not discussed in the case of Murrell v. City of Sapulpa (1931) 148 Okla. 16, 297 P. 241, plaintiff's judgment for principal and interest on warrants was affirmed. The facts in that case clearly disclose that no appropriation had been made for interest on warrants. The case does, however, rely on the rule that if at the time the contract was made, the indebtedness created thereby, together with all previous valid indebtedness, did not exceed the income and revenue of the county provided for such year, the claimant will be entitled to judgment for the amount of his claim. This is in accord with our view of the case, and although not decided in the Murrell Case, supra, it is apparent that the court believed interest to be an incident of the debt and not within the purview of section 26, article 10, of our Constitution.

We have often held that warrants and certificates of indebtedness may be issued to the full amount of the appropriation or estimate made and approved by the excise board. Blake v. Abraham (1931) 149 Okla.

112, 299 P. 488; Board of Com'rs of Le-Flore County v. Central National Bank (1936) 177 Okla. 11, 57 P.2d 257. We have likewise held that an appropriation for interest need not be made in a separate item, but that same may be made in the particular item of appropriation against which a warrant is issued. Morley v. State ex rel. Board of Education of City of Tulsa (1934) 171 Okla. 46, 47 P.2d 170. These holdings recognize that interest payments are not limited to a definite appropriation for that purpose, since, otherwise, warrants could not be issued to the full amount of the appropriation, if part of the appropriation for a particular item is for interest.

This conclusion is further substantiated by our holding in St. L.-S. F. Ry. Co. v. Choctaw County Excise Board (1935) 173 Okla. 312, 48 P.2d 312, wherein we held that at the end of a fiscal year, in determining the amount of valid unsettled contracts made during such year and the amount necessary to liquidate such contracts, the amount of interest on outstanding warrants that has accrued and will probably accrue in the future may be added to the principal amount of such warrants; and the amount calculated for such interest is not necessarily governed by the amount of a prior appropriation which may have been made therefor. The court pointed out that the accrued interest on warrants is a valid obligation. This was so even though the interest may have exceeded an appropriation therefor. It follows, therefore, that such interest is a valid obligation even though no appropriation had been made therefor, since, if section 26, article 10, of our Constitution was applicable, the amount of interest over and above an appropriation therefor would be an invalid obligation, even as an obligation for which no appropriation at all had been made. Indeed, accrued interest must be a valid obligation, since, otherwise, no part of the public funds could have been used to provide for its payment.

Defendant relies on the case of Morley v. State ex rel. Board of Education of City of Tulsa, supra, as requiring, in effect, an appropriation for interest on warrants before same may be paid, since we held therein that it is the duty of the board of education to include in its estimate of needs a sum sufficient to pay interest on warrants. and if the board fails to discharge this duty. the excise board may add an item of appropriation reasonably adequate for that purpose. Defendant's contention must fail for the reason that nowhere was it stated or intimated that interest on warrants could

not be paid in the absence of an appropriation therefor. It is true that we will require such an appropriation in a timely and proper action, but it does not follow that in the absence or insufficiency of such an appropriation, interest may not legally be paid.

In fact, we recognized same could legally be reduced to judgment in said case, when we stated that the failure to make such appropriation would "saturate the sinking fund of the school district with funding bonds and judgment indebtedness" unless a "timely and proper effort is made to avoid such consequences."

We therefore hold that the trial court was correct in allowing interest on general fund warrants held in the sinking fund at the rate of 6 per cent. per annum from date of registration to the date of judgment.

■ We will now consider the correctness of the judgment of the trial court as to the warrants held in the county emergency investment fund. In this connection defendants urge: (1) That under the provisions of chapter 137, Sess. L. 1933, there is no authorization or intention to permit the warrants purchased in the fund in question to be reduced to judgment or funded; and (2) that to permit warrants held in the county emergency investment fund to be reduced to judgment is, in effect, to hold that the county may sue itself.

Chapter 137, Sess. L. 1933, was later repealed by section 1, art. 3, chap. 50, Sess. L. 1935. In considering the merit of proposition (1), we must analyze chapter 137, supra, the title of which reads as follows:

"An Act authorizing the Establishment, in each County of a 'County Emergency Investment Fund', apportioning thereto One-Half of all Moneys received by any County from Motor Vehicle License Fees and the Excise Tax on Gasoline, providing that said Fund, or so much thereof as may be necessary, shall be used, under the direction of the County Treasurer for investment in Nonpayable County Warrants and Judgments based upon Warrants; providing for Payment into Sinking Fund for Retirement of Road Bond Indebtedness; providing for Reimbursement of said Fund by Collections from Ad valorem Taxes; providing for the Disposition of the moneys remaining therein; and declaring an emergency."

Section 3 of the act reads as follows:

"Each County Treasurer shall, as collections are made of ad valorem taxes levied for current expense. or to satisfy judgments rendered on account of warrants issued for previous fiscal years, take up such county warrants or judgments so held for investment in the said 'County Emergency Investment Fund', and shall reimburse, from such ad valorem taxes, the said fund so invested in all respects and in the same manner as now provided by law."

No express authorization is granted to the county treasurer to sue on the warrants held by him in the county emergency investment fund. Nor do we think such authority may be implied, in view of the fact that the Legislature has clearly provided and selected the method by which the warrants so held should be liquidated, viz., from collections of ad valorem taxes. We cannot imply in this case an authorization to liquidate the warrants in a manner other than that provided by the Legislature, since the intention of that body appears to us to require liquidation of the warrants from ad valorem collections and by no other method. Particularly impelling is this construction when it is considered that to hold otherwise would permit a greatly increased burden on the taxpayers of the various counties, and to add to the financial distress of these counties, when it is admitted by counsel for plaintiff as well as for defendant that the purpose of the Legislature in passing chapter 137, Sess. L. 1933, was to relieve the counties of the state from serious financial embarrassment. It is axiomatic that the intention of the Legislature, when ascertained, must govern. State ex rel. Read v. Midwest Mut. Burial Ass'n (1936) 176 Okla. 468, 56 P.2d 124.

Plaintiff relies on the case of City of Wilburton v. King (1933) 162 Okla. 32, 18 P.2d 1075, as sustaining its contention that the county treasurer has the implied authority to institute this action. There we held that the city treasurer could maintain an action against the city to recover judgment on the city's general warrants held by him in the sinking fund. But in that case we were dealing with the rights and liabilities of the treasurer in a situation altogether different from the present one. The sinking fund is a trust fund for the benefit of third parties; that is, interest coupon, bond, and judgment holders. The statutes regulating the fiscal management of municipalities required the treasurer to invest the sinking fund, and at the same time charged him with the responsibility of applying the sinking fund in liquidation of the maturing payments of bonds and interest coupons. It is readily apparent that his obligation to keep the sinking fund in a liquid condition to meet the demands against it, of necessity, required that he have the power to effectively discharge such duty imposed by law upon him.

But no such condition exists in the present case. The county emergency investment fund is not a trust fund for the benefit of third parties. There is no express or implied mandate contained in chapter 137, supra, directing the county treasurer to maintain the fund in a liquid condition. The law in question, on the other hand, expressly provides that the treasurer "shall, as collections are made of ad valorem taxes levied for current expense * * * take up such county warrants * * * so held for investment in the said 'county emergency investment fund', and shall reimburse, from such ad valorem taxes, the said fund so invested. * * *" Sec. 3. We believe the maxim "expressio unius est exclusio alterius" applicable here.

Plaintiff further points out that the motor vehicle license fees and the gasoline excise tax, which constituted the county emergency investment fund, are state funds collected and apportioned to the counties for county highway and road construction and maintenance to be used to pay county obligations, and contends that if the act in question be construed to deny the treasurer the right to reduce the general fund warrants held therein to judgment, same would violate section 19, article 10, of the Oklahoma Constitution, which provides that "* * * no tax levied and collected for one purpose shall ever be devoted to another purpose", since the tax levies for their repayment have failed. We do not agree with this contention. Assuming, without deciding, that this section of the Constitution applied to the state funds in question, yet it does not follow that to avoid its effect, the Legislature must provide several remedies for the reimbursement of the original fund. The Legislature, in section 3 of the act, provided a method by which the original fund could be repaid, and the funds used for the purpose for which collected. This is sufficient to comply with section 19, supra, assuming it to be applicable. Furthermore, the act creating the emergency investment fund is prospective, and applied only to revenues raised after its enactment. The act broadened the purpose for which the revenues were raised, and after its enactment they were raised for that purpose as well as for highway construction and maintenance purposes.

We therefore hold that the trial court erred in rendering judgment for plaintiff on warrants held by him in the county emergency investment fund, since the county treasurer has no authority to bring suit thereon.

This holding renders it unnecessary for us to pass upon defendant's proposition No. 2, to the effect that the county cannot sue itself.

■ Defendant further contends that certain warrants upon which judgment was rendered were void on the ground that they were issued for purposes for which there was no appropriation. The claims involved were incurred during the fiscal year 1930-31 and were for the purchase of a tractor, two scrapers, a plow, a radiator, repairs, gasoline, oil and labor. These claims were charged, and warrants issued, against an appropriation for "maintenance of roads and bridges". Defendant's theory is that the items above mentioned can only be charged against a specific appropriation therefor, and there was none here.

As to the warrants held in the county emergency investment fund and upon which judgment was rendered, the trial court committed error, irrespective of the merit of defendant's contention, by virtue of our holding with reference thereto. We are concerned, therefore, only with the warrants issued in payment of the claims above set out which are now held in the sinking fund.

Section 3729, O. S. 1931, authorizes the State Examiner and Inspector to prescribe a system of bookkeeping for all county officers; and pursuant to this authority, that officer prepared the budget form used for the fiscal year 1930-1931, which, so far as the county highway fund is concerned, was in the following form and was filled in by the board of county commissioners and the excise board of Pushmataha county as follows:

| | County Highway Fund | Estimate by Bd. of Commissioners | Appropriations by Excise Board |
|---|---|---|---|
| 1. | Salary of County Engineer | $ 750.00 | $ 750.00 |
| 2. | Salaries of Reg. Employees | | |
| 3. | Spec. Services and Extra help | | 225.00 |
| 4. | Office Suppl., Bl. Bks., Prtg. | 100.00 | 100.00 |
| 5. | Postage, Tel. and Telegraph | | |
| 6. | Engr's. Supplies and Equipm. | | |
| 7. | Sundry Expenses | | |
| 8. | Traveling Expenses | 300.00 | 300.00 |
| 9. | Publishing Notices | | |
| 10. | Purch. of Tools, Trucks, Machinery, Autos, etc. | | |
| 11. | Maintenance of Tools, Trucks, Mach., Autos, etc. | | |
| 12. | Gasoline, Oil and Grease | | |
| 13. | Per Diem of Cty. Com'rs overseeing Roads, Bridges | 2,250.00 | 2,250.00 |
| 14. | Mileage | 750.00 | 750.00 |
| 15. | Maintenance of Roads and Bridges | 45,800.00 | 45,679.75 |

Fiscal Year Ending June 30, 1931

It can be seen from the foregoing that no appropriations were made or even requested for items numbered 10, 11, and 12, which, if done, would have covered the claims for which the warrants in this case were issued.

Section 12677, O. S. 1931 (68 Okla. St. Ann. sec. 289), provides in part:

"(a) The appropriation for the county shall be itemized so as to show the amount of funds appropriated for the several offices, boards and commissions and shall be detailed in separate items as to each thereof, as follows: * * * for construction of new bridges so itemized as to show the location of each proposed bridge and the amount appropriated therefor, separately stated; for maintenance and repairs on bridges; for construction and maintenance of state roads (appropriation in lieu of one-fourth or other mill levy for county road construction fund); for opening and changing roads, and costs incident to condemnation proceedings to obtain right of way for roads; for machinery, tools and equipment for road work, for equipment for working convicts on road work and compensation of guards therefor; for each other expenditure as may be necessary and authorized by law but not herein enumerated. * * *"

We held in Grubb v. Smiley (1930) 142 Okla. 19, 285 P. 38, that the items set forth in section 12677, supra, must be specifically appropriated; In Re Gypsy Oil Co. (1930) 141 Okla. 291, 285 P. 67, that such "itemization is mandatory"; and in Austin-Western Road Machinery Co. v. Board of Com'rs of Carter County (1932) 160 Okla. 232, 11 P.2d 117, we held that the first requirement of a valid contract between any person and the board of county commissioners affecting funds in the county highway fund is that "an appropriation must have been made by the board of county commissioners, and approved by the excise board of said county, making an appropriation for the kind of work or material sought to be covered in said contract."

The warrants issued in payment of the claims for the purchase of a tractor, two scrapers, and a plow are void because not within · an appropriation therefor, as required by section 12677, supra, and error was committed in rendering judgment thereon. This court holds that no error was committed in rendering judgment on the warrants issued in payment of repairs, gasoline, oil, and labor on highway machinery and equipment, since these items are properly within the appropriation made for "maintenance of roads and bridges," for the

reason that section 12677, supra, does not expressly require a specific appropriation for these particular items, and the appropriation made for "maintenance of roads and bridges" is sufficient to include such expenditures.

The writer is of the opinion that the warrants issued in payment of the claims for repair, gasoline, oil, and labor on highway machinery and equipment are void because not within an appropriation therefor. Section 12677, supra, requires that the appropriation "for each other expenditure as may be necessary and authorized by law" be itemized. I think the expenditures for repair, gasoline, oil, and labor come within this requirement, and was so recognized by the State Examiner and Inspector, since that officer, in the budget form prepared by him, provided specific items therein for such purposes. These items were listed as No. 11, "Maintenance of Tools, Trucks, Machinery and Autos, etc.," and No. 12, "Gasoline, Oil and Grease." The county commissioners in making the estimates, and the excise board in making the appropriations, had this form before them and deliberately failed to make any appropriation for these items. This clearly shows an intent not to make an appropriation for these items. For these reasons, I believe the warrants issued for payment of the claims for repair, gasoline, oil, and labor on highway machinery are void.

The court is of the opinion, however, that the better practice would be to follow the form prepared by the State Examiner and Inspector and to make specific appropriations for such items in the budget, or to make supplemental appropriations to cover such expenditures when the need for same is seen and before the obligations are incurred. Such procedure would redound to the benefit of the taxpayers.

Plaintiff urges that defendant has waived the right to challenge these warrants on the ground that the appropriation was not itemized because the defendant had filed a protest against the sufficiency and form of the appropriation for the fiscal year involved before the Court of Tax Review and had later dismissed said protest. In this connection, plaintiff relies on section 12306, O. S. 1931, which reads in part:

"If no protest is filed by any taxpayer as to the levy of any county or municipal subdivision thereof within said 40-day period, all appropriations and levies of said county

and municipal subdivisions thereof not protested shall be deemed to be legal, and all proceedings for refunds or suits for refunds, or recovery of taxes or to contest the validity thereof in any manner shall be barred."

We cannot agree with plaintiff's contention. Defendant does not now challenge the legality of any appropriation, but only attacks the warrants as not being within any existing appropriation to cover the item of expense for which they were issued. This is not foreclosed by section 12306, supra.

Plaintiff also contends that the total amount of the claims objected to is $1,269.07; that the total appropriation for "maintenance of roads and bridges" was $51,283.77, and that under the rule announced in Protest of S. L.-S. F. Ry. Co. (1931) 153 Okla. 283, 5 P.2d 763, the expenditures are legal. In that case we held that appropriations for contingent expenses in different city departments were not invalid because not more particularly itemized, where they are small when considered in connection with the total appropriations and when they appear reasonable. In that case the "contingent" appropriations totaled $965 and the total appropriations, $34,425.

But this case is not applicable here, for the reason that, in the case at bar, no appropriation for "contingent expenses" was made in the 1930-31 budget. In the case relied on by plaintiff, a protest against such an appropriation sought to be made was denied.

■ Defendant contends that certain claims for the fiscal years 1930-31 and 1933-34 upon which judgment was rendered for plaintiff show on their face that they were incurred for a purpose for which an appropriation was authorized, but which appropriation had been exhausted prior to their incurrence, and they are therefore void.

Two claims of the 1930-31 series are attacked. Both were for special services and totaled $200. There was an appropriation made for "special services and extra help" in the sum of $225. But defendant asserts that prior to these claims, three other claims totaling $379.17 had been incurred which should have been charged against the "special service" appropriation, but which had not been; and that if properly charged against the above appropriation, the two claims sued on are in excess of the appropriation. The trial court denied defendant's contention, apparently on the theory that the three warrants were prop-

erly chargeable against accounts other than that for "special services." It might be that these warrants could have been charged against the appropriation "salaries for regular employees." We therefore affirm the holding of the trial court.

Warrants numbered 701 to 806, inclusive, of the 1933-34 series, upon which judgment was rendered, were assailed for various reasons. The record discloses that all of these warrants were held in the county emergency investment fund, and by virtue of our holding heretofore, could not be reduced to judgment. It is unnecessary, therefore, to pass upon defendant's contentions as to these warrants.

■ Defendant next urges error of the trial court in rendering judgment on warrants numbered 1206, 1211, 1212, 1213, 1089, issued against 1930-31 appropriations, on the ground that the claims were incurred in a prior fiscal year. Plaintiff admits error on warrant 1089. It further appears that this warrant, together with that numbered 1211, was held in the county emergency investment fund. Judgment should not have been rendered thereon.

We have examined the record as to the other warrants and find the judgment of the trial court thereon to be correct. The evidence does not disclose the claims to have been incurred during a fiscal year prior to 1930-31, against which year's funds they were allowed.

■ Defendant further contends that certain warrants upon which judgment was rendered are void because the claims were by county officers and no receipts were attached to the claims. Defendant cites section 5969, O. S. 1931, as controlling. An examination of that statute discloses that same does not apply to county officers. It was enacted as section 5, ch. 119, Sess. L. 1913. Section 4 of said act (now compiled as section 7444, O. S. 1931), however, does apply to county officers. Nevertheless, said statute does not render the warrants void, but subjects the officer filing the claim and the board of county commissioners allowing same to certain penalties. We therefore conclude that the trial court committed no error in rendering judgment on these warrants, excepting, of course, any that might be held in the county emergency investment fund.

■ Defendant's next contention is that the claims upon which certain warrants were based and which warrants were here reduced to judgment were not signed by the claimant, but by a third party, and are

therefore void. In this connection, defendant relies on section 5966, O. S. 1931, which reads in part:

"All claims for money due from any county, township, city, or incorporated town shall be itemized in detail, verified and filed for allowance with the proper authority not less than five days before the meeting of such body for such purposes."

We have held contrary to defendant's contention in State for Use of First State Bank v. Board of Com'rs of LeFlore County (1936) 177 Okla. 470, 60 P.2d 788, and Kansas City Southern Ry. Co. v. Germo Mfg. Co. (1935) 173 Okla. 497, 49 P.2d 158.

We therefore hold that a claim, otherwise proper, which is signed and the verification thereto contains the phrase "and that I am duly authorized to make this affidavit," as in the present case, need not be signed by the claimant himself.

■ Certain warrants are also attacked by defendant on the ground that they were issued for purposes not authorized by law. The record discloses that these warrants were based on claims incurred by the county superintendent, county commissioners, county clerk, and county treasurer for expenses of trips to Oklahoma City, apparently to attend the Court of Tax Review.

We agree with this contention. Neither the statutes relating to traveling expenses of the officers above named, and in force at the time of the incurrence of these expenses, nor the act relating to the Court of Tax Review authorizes the payment of traveling expenses of these officers to Oklahoma City for any purpose, including attendance at the Court of Tax Review. (See section 6774, later repealed, sections 7856, 7858, O. S. 1931.) Section 12309, O. S. 1931, which is section 5 of the act creating the Court of Tax Review, specifically provides:

"The county attorney, assisted by the Attorney General at the request of the county attorney, shall represent his county and the municipal subdivisions thereof at the hearing of any protest before said Court of Tax Review, and each county shall pay all necessary expenses of its county attorney in attending any such hearings."

This express pronouncement by the people, who adopted the law creating the Court of Tax Review as an initiative measure, clearly indicates that they did not intend county or municipal officers, other than the county attorney, to receive expenses for attending hearings before the Court of Tax Review. Had the people so intended, they would have granted such authority to the officers, as they did to the county attorney. The maxim "expressio unius est exclusio alterius" is applicable here. The rule is well established in this state that before a county officer can rightfully draw money from the county treasury, either for salary, fees, expenses, or extra compensation, he must be able to point to some constitutional or statutory provision or some lawful contract, either express or implied, that justifies his claim to such money. Huntington v. Board of Com'rs of Grant County (1914) 44 Okla. 276, 144 P. 385; Broadwell v. Board of Com'rs of Sequoyah County (1922) 86 Okla. 164, 207 P. 296. No such authorization has been pointed out herein, and we have found none. Judgment should have been for the defendants on these warrants.

■ Defendant asserts that 1930-31 warrants based on claims for mileage and per diem for the board of county commissioners for overseeing roads and bridges are invalid for the reason that they were issued against an appropriation for this purpose in the county highway fund. Defendant avers that these claims should have been charged against an appropriation for such purpose in the general fund.

Defendant does not assert that such claims are not authorized by law, but contends that they could not be paid from the appropriation for such purpose in the county highway fund, relying on the case of Protest of S. L.-S. F. Ry. Co. (1931) 149 Okla. 53, 299 P. 190, which held that there was no authority to make an appropriation for county commissioner's mileage and per diem in the county highway fund.

The record discloses that the defendant had filed a protest against the appropriation in question before the Court of Tax Review, but had dismissed same before its determination. We believe section 12306, O. S. 1931, applicable to this situation. There it is provided that "* * * all appropriations * * * not protested, shall be deemed to be legal, and all proceedings * * * to contest the validity thereof in any manner shall be barred."

This differs from the situation considered hereinbefore, where plaintiff defended the legality of certain warrants charged with not being within an existing appropriation, for here defendant attacks the legality of the appropriation itself, and not the warrants.

The cause is reversed and remanded to the trial court, with directions to proceed

in accordance with the views set forth in this opinion.

OSBORN, C. J., and PHELPS, J., concur in full.

BAYLESS, V. C. J., and DAVISON, J.. concur in Syllabus 1, 2, 4, 5, 6, and 8, and dissent to Syllabus 3 and 7.

RILEY, J., concurs in Syllabus 2, 3, 4, 5, 6, 7, and 8, and dissents to Syllabus 1.

WELCH, J., concurs in Syllabus 1, 4, 5, 6, and 8, and dissents to Syllabus 2, 3, and 7.

CORN, J., concurs in Syllabus 1, 4, 5, 6, 7, and 8, and dissents to Syllabus 2 and 3.

GIBSON, J., concurs in Syllabus 2, 3, 4, 5, 6, and 8, and dissents to Syllabus 1 and 7.

WELCH, J. (dissenting). I cannot concur in the majority opinion and deem it proper to express my views on the following points.

The majority opinion holds in paragraph 2 of the syllabus that the county treasurer has no authority to sue on warrants held as investment in the county emergency investment fund. The reason given therefor in the body of the opinion is that no express statutory authority is granted to so sue, and also that the majority believes that authority to sue cannot be implied because the statute provided that when taxes were collected for the payment of warrants held in such fund the warrants should be taken up and canceled and the money returned to or paid into that fund. The majority opinion reasons that because the statute mentioned one way that the warrants held in that fund could be liquidated, it necessarily follows that no other method could be pursued.

No authority is cited sustaining either reason for denying the right to sue, and it seems to me neither reason is sound.

The statutory provision in effect that, when the treasurer collects back taxes with which to pay outstanding warrants. he shall pay them with such money, even though the warrants he held in this investment, is but a restatement of that which would have been the treasurer's duty anyway. That is, when the county treasurer collects back taxes to pay outstanding county warrants, it is his duty to use that money only for the purpose of paying those warrants. That is true whether such outstanding warrants are held by the original payees of the warrants, or by an investor, or in any investment. Surely that is true

regardless of the character of the investment. Could anyone cite a circumstance where this would be changed by reason of the character of the investment? I think not. And I regard it as certain, and readily apparent, that this duty of the treasurer does not in any manner affect or restrict the right of any owner of a valid warrant to sue thereon. The general right of any warrant holder to sue thereon is recognized by all the courts, and by the Legislature in prescribing the applicable limitation period in which to sue on a warrant. Article 7, chapter 32, S. L. 1935, page 127.

The Legislature, in restating this duty of the county treasurer to pay these warrants with back tax money collected to pay same, merely made it plain that these outstanding warrants held in this investment were to be treated as any other outstanding warrants, however held and owned. How, then, could this provision affect the right to sue on these warrants? I submit it could not. If outstanding warrants are held as investment in any sinking fund, and back tax money is collected to pay such warrants, is it not the duty of the county treasurer to use such money to pay such warrants? I think so. It is true the statute authorizing the investment of sinking fund money in warrants does not expressly so state, but I insist that such would be the duty of the treasurer, with or without any such express statement. Nor does this in any manner affect the right to sue on any such warrants. This court by the majority opinion upholds the right to sue on warrants held in the sinking fund, as this court has repeatedly held before. Wilburton v. King, 162 Okla. 32, 18 P.2d 1075.

Why hold the opposite as to warrants held in the county emergency investment fund? Why are not the same rules applicable whether warrants are held in this fund or in the sinking fund? In either instance the warrants are outstanding; the character of the holding is the same, that is, the warrants are held as "an investment;" in either instance, when back tax money is collected to pay the warrant. it is the duty of the treasurer to pay the warrant with that money by paying the money into the fund holding the warrant and taking up and canceling the warrant. In neither instance is the warrant paid by being taken and held as an investment. In either instance the right to take the warrant as an investment is the same. Does it not logically follow that the right to sue on the warrant is the same in either instance? I think so.

But the majority opinion reasons that the statute authorizing this investment gives no express authority to sue. That is so, but what difference does that make? See Wilburton Case, supra. There are many instances where statutes authorize particular investments without therein granting express authority to sue on the investment, for instance:

Sinking fund investment in United States bonds, or state bonds, or bonds of any county, city, town, township or school district, or state warrants or warrants of any county, city, town, township or school district (sections 5914 and 5915, O. S. 1931). Sinking fund investment in federal farm loan bonds (section 5926, O. S. 1931). Guardian's investment of ward's funds in real estate mortgages, or United States bonds, or state bonds or bonds of municipal corporations or building and loan stock (section 1459, O. S. 1931).

Prior to this time it seems never to have been contended or urged that the right to sue in reference to any such investment would be lost unless preserved by express provision in the same statute authorizing the investment. I see no merit in the contention now. A somewhat similar contention was made, but denied by this court, in Wilburton v. King, supra.

The statute authorizing the taking and holding of warrants as investment in the sinking fund is wholly silent as to any right to sue on those warrants, nevertheless the right to sue exists, and is upheld in this same opinion, and in the Wilburton Case, supra. Then surely it is not logical to say that warrants held in this investment fund may not be sued upon for lack of express provision for suit in the statute authorizing the investment.

As I read our statutes, the right to sue on any valid county warrant accrues one year after the close of the fiscal year in which it is issued. Article 7, chapter 32, S. L. 1935. And suit thereon may be brought at any time thereafter within the limitation period prescribed. Article 7, chapter 32, S. L. 1935. This right goes with the warrant when transferred, no matter to whom, nor to what investment the transfer is made. Thus it is that the right to sue on a warrant exists whether the warrant is held by the original payee, his banker, an individual investor, the county treasurer as an investor, or by any other investor. The majority opinion suggests that to apply that rule here would permit an increased burden on the taxpayers. I would go as far as anyone to prevent that, but I cannot see that any increased burden is created by the holding that the right to sue on these warrants still exists. It is always a burden on taxpayers to pay warrants, or to pay judgments rendered on warrants, but the burden is the same whether payment is made to or for the original payee of the warrant, or his banker, or some one else who holds the warrant. The burden on the taxpayers to pay these warrants came into existence by operation of law when the warrants were issued. The right to sue came into existence by operation of law in one year after the close of the fiscal year of issuance without payment thereof. Those burdens on taxpayers existed before this investment was made. They were neither increased nor diminished by the fact that the warrants were transferred and taken for investment. Nor would those burdens be increased or diminished by a logical application of the right to sue on valid warrants. The taxpayers' burdens as to payments of warrants are fixed by the legislative enactments and are not discharged except by payment of the warrants or perhaps by lapse of the time in which suit thereon may be brought. While the courts will always be concerned as to burdens to taxpayers, that concern cannot be extended to a denial of the right to sue on a valid warrant by the owner and holder thereof, when suit is timely brought.

I also see error in the rules announced in the 3rd and 4th paragraphs of the syllabus. As to those points, we are considering warrants issued to pay for repairs to equipment, and to purchase machinery, tools, equipment, gasoline, oil or grease, and labor for use in maintenance of roads and bridges. As shown by the form copied in the majority opinion, there was a space provided for the itemization of the highway appropriation, and a special space provided for the appropriation for each of the items mentioned above, that is, for repairs or maintenance of machinery, purchase of tools, equipment, gasoline, oil and grease, and for labor. However, there was no specific appropriation or itemization of any sum for either of these named purposes. There was a general appropriation under item No. 15 for "maintenance of roads and bridges." It is decided or conceded in the majority opinion that all these expenditures were for materials, equipment, and labor for maintenance of roads and bridges. Now, however, the majority opinion holds invalid the warrants issued for tools,

equipment, and machinery for lack of specific appropriation or itemization; while holding valid the warrants issued for labor, gasoline, oil or grease, and repairs or maintenance of machinery, though as to each of those items there was the same lack of specific appropriation or itemization in the blank space provided therefor. I think that is inconsistent, and I, therefore, cannot concur therein. I think, of course, the laborers should be paid, likewise the parties who furnished gasoline, oil and grease, and repairs or replacements for the machinery. But the same wholesome rules as to appropriation or itemization apply to those expenditures as to the others here involved.

It is not questioned but that all these warrants were issued within the appropriation specifically made for "maintenance of roads and bridges," and for that purpose. It is my view that that appropriation, though somewhat general in its terms, became legal and valid by reason of the statute (section 12306, O. S. 1931), and the rule as referred to in paragraph 8 of the syllabus of the majority opinion; and that all warrants issued in payment of valid claims for such purpose, within the amount there appropriated, must stand in the same position as regards further itemization or more specific appropriation, and that none of them need be held void merely for lack of such further itemization or more specific appropriation.